POOL *v*. THE STATE.

1. The jury having found a verdict for the offence of murder, and desiring to recommend imprisonment in the penitentiary for life, it was proper for the court, in the presence of the jury and at their request, to allow this recommendation to be put in proper form by the solicitor-general, and thus prepare the verdict for signature by the foreman.

2. A request to charge with reference to doubt, with no qualification as to the doubt being *reasonable*, was properly refused.

3. One of the questions in grading the homicide being as to whether the pistol was recklessly fired, with criminal indifference to the consequences, it was not necessary, in order to constitute the offence of murder, that the accused should have been engaged in an unlawful act at the time of firing it. A request to charge the jury, the whole of which is not pertinent and legal, should be declined.

4. The court is not bound to instruct the jury that when the proof in favor of the accused is stronger and more direct than the evidence against him, there is room for doubt and he ought not to be convicted.

5. Under the evidence, it was not error to decline a request to charge section 4302 of the code, in the language of that section, on the subject of homicide by misadventure. The pistol was handled in a way to make it dangerous to bystanders, and so handling it was culpable negligence.

6. It was not error to decline to charge the abstract proposition that when the conduct of the accused is equally susceptible of two constructions, the one in favor of the hypothesis of innocence is the one that ought to be adopted, there being no conduct in evidence specially requiring the application of this principle.

7. A statement in the motion for a new trial that the court allowed evidence to go to the jury, over objection of defendant's counsel, relating to a subsequent difficulty with another party, without specifying what the evidence was, is not sufficiently full and certain as a basis for assigning error; more especially where, according to the testimony of one of the State's witnesses as set forth in the brief of evidence, the difficulty with the third person was apparently a part of the *res gestæ* of the homicide, and material in determining whether the shooting was willful or accidental.

8. Though one may have a pistol at a church in violation of the statute prohibiting the bearing of arms at such a place, and though he may handle the pistol negligently and discharge it intentionally, thereby committing accidentally a homicide, yet this is not necessarily murder. It may be involuntary manslaughter in the commission of an unlawful act. The question would depend upon whether it was a reckless or only a negligent shooting.

9. When the court fails to charge fully, to the satisfaction of counsel for the accused, on the prisoner's statement, attention should be called to the omission.

10. Grounds of objection to testimony must be stated.

11. No error as to other grounds of the motion for a new trial.

July 13, 1891.

## Criminal law. Murder. Practice. Verdict. Charge

of court.    Evidence.    Manslaughter.    Before Judge
WELLBORN.    Hall superior court.    July term, 1890.

Jesse Pool, having been convicted of murder, ex-
cepted to the refusal of a new trial.    The grounds of
his motion sufficiently appear in the decision.    The
deceased was killed by a pistol-shot at the hand of the
defendant, while the deceased and others (including
Clayton Moon, deceased's uncle) were holding defend-
ant, and trying to dissuade him from continuing to
follow a white boy apparently with the purpose of en-
gaging in a fight.    The defendant's theory was, that
the pistol was fired by accident as his wrist was seized
by the deceased and he tried to jerk loose; and that he
had no ill feeling whatever for the deceased, but they
were friends.    According to a part of the evidence for
the State, when the pistol was discharged, the defend-
ant had freed himself from the hold of the deceased as
well as of the others, and had jumped back a few feet.
He was partly intoxicated; the killing occurred hard
by a church in which was being held a meeting to which
he had come; and Moon, in trying to prevent his going
further, was acting at the instance of Dal. Pool, defend-
ant's father, whom defendant had just left abruptly.
Other evidence for the State tends to show that the de-
fendant twice threatened to shoot the deceased if the
latter did not loose him, which he did not do until he
was shot, whereupon defendant said, " I told you if you
didn't turn me loose I would shoot you."    He had taken
his pistol from his pocket and was carrying it in his
hand before he was overtaken by Moon.    It was in evi-
dence that the deceased was with the white boy as the
defendant approached; and that as defendant was
stopped, the deceased came to where he was, and said,
"Come on, let's have no difficulty; come on back to the
house; the boy has done gone."    Defendant said to de-
ceased, "G— d—— you, do you take it up?" to which

deceased replied in the negative, and further stated that he was a friend to defendant, loved him and wanted to talk to him. The shot took effect in the lower part of the bowels. There was evidence for the defendant that he was not pointing the pistol towards deceased; that it was discharged by the jerk of his hand, and Moon and the others were snatching him at the time; that he was begging to be turned loose, and Moon said, "Before I will turn you loose, I will slam you down and knock your brains out against the ground," to which defendant replied, "I reckon not," and Moon said, "You heard what I said," and here the deceased ran up and caught defendant's wrist, saying, "Jess, why in the hell don't you hear to it?"; and that defendant declared, immediately after the shooting, that he did not do it intentionally. Moon testified that, as the deceased was taken hold of and supported, the defendant said he was going for his daddy to go on his bond, and after going about seventy feet, accompanied by witness and another, he stopped and declared with an oath that he would go no further, and asked Moon why he had held him. Moon denied having done so, and defendant said, "Anybody that says I did not have my pistol cocked by the time I left the top of the hill at the meeting-house, tells a G— d—d lie." Moon replied that it was a self-actor; and defendant did not have his hand on the trigger that way, for it would not have gone off; upon which the defendant snatched a stick from the hand of a bystander and struck at Moon twice. After further remonstrance by Moon, he and defendant engaged in a fight, in which the latter fired his pistol four times and Moon threw four rocks, hitting defendant twice. The defendant's testimony conflicted with that for the State on this subject (as in most other respects), his witnesses testifying that Moon began the second difficulty by approaching defendant with a knife and making statements indi-

v 87-34

cating that he would be revenged for the shooting of the deceased. There was some testimony that this second shooting occurred about fifteen minutes, or a little longer, after the first; but the most of the evidence would seem to show that the time could not have been so long.

F. M. JOHNSON, for plaintiff in error.

HOWARD THOMPSON, solicitor-general, by S. C. DUNLAP, *contra*.

LUMPKIN, Justice.

1. When it is thoroughly understood what verdict the jury desire to find, there can be no possible error or injury to any one in allowing the solicitor-general, in open court at their request, to put the verdict in such form as will legally express the finding they wish and intend to make. *Brantley* v. *State*, 87 *Ga.* 149, 13 S. E. Rep. 257.

2. In criminal cases, the jury must be satisfied beyond a *reasonable* doubt of defendant's guilt before he can be legally convicted; and a request to charge " if there is any doubt as to whether the defendant is guilty, it is the duty of the jury to acquit," was properly refused. It is not necessary that the jury should be satisfied beyond *all* doubt of defendant's guilt, and this, in effect, is the meaning of the charge requested. With doubts about the law juries are not concerned.

3. It has been frequently ruled by this court that unless a request to charge the jury is in all respects pertinent and legal, it should be declined. Where a request is in part proper and in part improper, the court cannot give it as a whole, and is not bound to separate the legal portions of it from those which are not so. The law infers guilty intention from reckless conduct; and where the recklessness is of such character as to justify this inference, it is the same as if defendant had delib-

erately intended the act committed. When, therefore, one recklessly fires a pistol with criminal indifference as to the consequences, and another is killed, it is not necessary, in order to constitute this killing murder, that the accused should at the time of firing have been engaged in the commission of some unlawful act, independent of and in addition to the reckless firing itself. The above remarks will, we think, be sufficient to show that the following request was properly refused: "If the defendant, when his pistol went off and killed deceased, had abandoned or was free from all evil intent, it could not be that at that time he was engaged in the commission of any unlawful act. But unless at the time of the killing he was engaged in the commission of an unlawful act, he could not be guilty of murder, or of involuntary manslaughter in the commission of an unlawful act. If a man, though intending to commit an unlawful act, abandons his intent to do so, and afterwards by accident kills a man, the killing is not murder, nor is it involuntary manslaughter in the commission of an unlawful act." Under this request, the jury might have acquitted defendant, although satisfied by the evidence that he was guilty of criminal negligence in firing the pistol at the time it went off and killed deceased.

4. When the court properly charges concerning the law of reasonable doubt, as was done in this case, it is not bound to instruct the jury as indicated in the 4th head-note. It is for the jury to determine when there is reasonable doubt of defendant's guilt and not for the court to inform them under what circumstances there is or is not room for such doubt.

5. When the evidence shows conclusively that the defendant handled his pistol in such a reckless manner as to make it dangerous to bystanders, the court properly refused to charge section 4302 of the code, relating to the law of homicide by misadventure.

6. The observations made above in reference to the 4th head-note are also applicable here, the more especially as the evidence fails to show any conduct on the part of defendant which would make the request referred to in the 6th head-note appropriate.

7. One ground of the motion for a new trial assigns as error the court's allowing evidence to go to the jury relating to a subsequent difficulty between defendant and another party, but does not specify what this evidence was. We are, therefore, unable to determine whether the admission of this evidence was such error as would require a new trial or not. It appears from the testimony of one of the State's witnesses that after the killing, defendant did have a difficulty with another person. It occurred so soon after the homicide as to be apparently a part of the *res gestæ* of the killing, and may have been material in determining whether the shooting was willful or accidental. The evidence just referred to was to the effect that defendant struck and shot at a bystander who appears to have done nothing but reproach him for having killed deceased.

8. The court, in effect, charged the jury that having a pistol at church would be an unlawful act, and then added: "But if you believe he had a pistol under such circumstances as rendered it unlawful to have it, and that he fired it off voluntarily, intending to fire it, and in such firing it hit Moon and killed him, then he would be guilty of murder." This charge, we think, was error. It amounted to instructing the jury that unlawfully having a pistol at a church, and there killing another with it, would necessarily be murder if the firing was voluntary. This, in our opinion, was stating the law too strongly against the defendant. If the shooting was intentional, but simply negligent, and resulted in the death of another, which was not intended, it

could not be more than involuntary manslaughter. On the other hand, if the shooting was intentional, and was done so carelessly and recklessly that the law would imply an actual intention to kill from the mere wantonness of the act, and death resulted, it would be murder. This question was not properly submitted to the jury, and for this reason a new trial will be ordered.

9–10–11. The head-notes state all that need be said concerning these grounds of the motion for a new trial.

*Judgment reversed.*