## 38559. COOK v. THE STATE.

HILL, Presiding Justice.

Nathaniel Cook was convicted by a jury of the murder of Betty Lou Walker and sentenced to life imprisonment. This is his appeal.

The evidence presented by the state showed that although the defendant and the victim were never married, they had a one-year-old daughter whom the defendant visited almost daily. On the night of

August 22, 1980, the victim's son, Ronald Walker, and his girlfriend, Janet Carter, were both at the victim's apartment. Ronald Walker last saw his mother alive, downstairs, at about 12:30 a.m. on August 23, 1980. The defendant was already upstairs in the victim's bedroom. Ronald Walker went back upstairs to his bedroom where he watched TV until 2:30 a.m. He never heard his mother come upstairs nor did he hear any other noise until just after he turned off the TV when he heard a loud bang. He went downstairs and as he reached the kitchen Janet came down and said, "Cook done shot Betty." The defendant then came in and said, "Call the police. I killed Betty." The defendant then left, saying, "I'll be back. I'm going home, and the police know where they can find me."

Janet Carter testified that she had heard the victim and defendant arguing in low voices earlier in the evening; that she was asleep when she was awakened by a loud boom; and that after Ronald went downstairs the defendant walked into the room and said, "I done killed Betty. Call the police."

Dr. Joseph Burton, the county medical examiner who performed the autopsy, testified that the gun was no more than several inches away from the victim's head when the fatal shot was fired.

The first police officer on the scene testified that the victim was lying face down on the bed with an apparent gunshot wound to the forehead, that there was no evidence of a struggle, that he could discern no vital signs, that he called for an ambulance, and that upon their arrival the ambulance personnel informed him that the victim was dead. Two other officers went to the defendant's apartment; as they arrived he came down the steps, saying, "I am the one that you are looking for. I am the one that did it." The officers arrested him, advised him of his rights, and took him to police headquarters. There he was turned over to another officer who again advised him of his rights, whereupon the defendant gave a statement in which he said that while downstairs he and the victim were arguing because she accused him of "fooling around" with other women, that the arguing continued after they went upstairs, and that "While we were arguing I reached over to the closet shelf in the bedroom and got my gun and shot Betty while she was in the bed." At his trial, the defendant testified that the victim was real jealous and while they were lying in bed, she was complaining about his alleged interest in other women. He got tired of listening to her so he got up to put his shirt on. While up, he picked his gun up off the closet shelf to put it in his pocket; just as he picked it up, the victim hollered at him "I'm tired of this," he turned around, and the gun accidentally went off.

1. The defendant contends that the evidence is insufficient to support the verdict, especially as to the element of malice. We

disagree. Viewing the evidence in the light most favorable to support the jury's verdict, it is sufficient to authorize a finding that the defendant deliberately shot the victim in the head at close range during or immediately following an argument. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Alexander v. State,* 247 Ga. 780, 783 (279 SE2d 691) (1981).

2. The defendant also contends that the trial court erred in overruling his motion to suppress his confession because only one of the two officers who was present at his interrogation testified. Detective Lt. Buckley testified that he read the defendant his rights and the defendant then voluntarily made a statement which Buckley transcribed. Officer Ashe witnessed the defendant's signature on his statement.

Officer Buckley was the only witness who testified during the hearing on the voluntariness of the statement.[1] The defendant did not call or attempt to call any witnesses. Nonetheless, the defendant objected to admission of the statement on the basis that the trial court could not consider the totality of the circumstances absent the testimony of all the witnesses present so the state's failure to call Officer Ashe was fatal.[2] No authority has been cited or found for this proposition and we disagree. There is no indication here that the defendant's statement was involuntary, nor is there any dispute as to the veracity of Lt. Buckley's testimony. In the absence of any indication that Officer Ashe's testimony would differ from Lt. Buckley's, the trial court's ruling is supported by the uncontradicted evidence. Cf. Sims v. Georgia, 385 U. S. 538, 541 (87 SC 639, 17 LE2d 593) (1967); *Cofield v. State,* 247 Ga. 98, 107-08 (274 SE2d 530) (1981); *Porter v. State,* 143 Ga. App. 640 (2) (239 SE2d 694) (1977). Officer Ashe had testified earlier during the trial and the defendant did not object when he was excused (subject to being recalled) or seek to have him recalled as a witness at the Jackson-Denno hearing. We find no error here.

3. Defendant also contends that state's exhibits 10-19 were erroneously admitted over his objection that the chain of custody was not established. Exhibits 10-19 consist of the murder weapon (10), the holster (11), metal fragments (12), hair fragments (13, 14, 15, 16), and bullets (17, 18, 19). Lt. Buckley testified that he packaged

---

[1] The hearing was conducted pursuant to Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] We note in passing that one of the "witnesses" to what transpires when a defendant makes a statement is the defendant himself. Yet the state does not thereby become empowered to compel the defendant to testify.

exhibits 10 and 12-19 and gave them to Captain Elliott.[3] Captain Elliott testified that he delivered the exhibits to the State Crime Lab on August 25. A firearms examiner at the State Crime Lab testified that he received exhibits 10 and 12-19 from Captain Elliott on August 25. But the defendant contends that this evidence is contradicted by Dr. Burton's testimony that the bullet fragments and the gun were brought to the Kennestone autopsy room on August 25. We disagree. Dr. Burton's testimony merely suggests that Captain Elliott stopped at the autopsy room before delivering the exhibits to the State Crime Lab. The trial court was authorized to find that the chain of custody of exhibits 10-19 was established and the court did not err in admitting these exhibits. See *Allen v. State,* 248 Ga. 676, 681 (286 SE2d 3) (1982). We note that in view of the evidence in this case, any error in admission of these exhibits would have been harmless.

4. The defendant's remaining enumerations of error all relate to the charge of the court. The jury was instructed as to murder, involuntary manslaughter in the commission of an unlawful act other than a felony, and the defense of misfortune and accident.

Relying on *Stewart v. State,* 158 Ga. App. 378 (280 SE2d 403) (1981), the defendant complains that the trial court erred in refusing to charge upon request on involuntary manslaughter in the commission of a lawful act in an unlawful manner. Code Ann. § 26-1103 (b). We disagree. Under this court's decision in *Raines v. State,* 247 Ga. 504 (3) (277 SE2d 47) (1981), a defendant who handles a gun in such a way as to accidentally cause the death of another human being, albeit without any intention to do so, has necessarily committed the misdemeanor of reckless conduct, Code Ann. § 26-2910, and is not, therefore, engaged in the commission of a lawful act and is not entitled to a charge under Code Ann. § 26-1103 (b). *Raines v. State,* supra; *Ranger v. State,* 249 Ga. 315 (4) (290 SE2d 63) (1982). *Stewart v. State,* supra, was decided three days after *Raines v. State* and is not controlling.

5. The defendant also enumerates as error that when charging the jury as to involuntary manslaughter in the commission of an unlawful act other than a felony, Code Ann. § 26-1103 (a), the trial court interjected into the charge the information that the sentence for that offense is one to five years. We agree that the trial court's comment that if the jury found the defendant guilty of this offense the court would have to sentence him to one to five years was error. *Harris v. State,* 234 Ga. 871, 873 (218 SE2d 583) (1975); *Ford v. State,*

---

[3] Lt. Buckley testified that he kept the holster, exhibit 11, in his possession from the date of the crime until the trial.

232 Ga. 511, 518-19 (207 SE2d 494) (1974). However, the defendant's request to charge on this offense included this information and he cannot complain that the court gave information he requested.

6. Defendant's remaining two enumerations of error do not merit discussion.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 8, 1982—
REHEARING DENIED JULY 22, 1982.

*Greene & Davis, Laurie C. Davis, Darrell Greene, Patrick H. Head,* for appellant.

*Thomas J. Charron, District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant District Attorney* for appellee.