A07A0327. WHITAKER v. THE STATE.
(648 SE2d 396)

ANDREWS, Presiding Judge.

Richard Alexander Whitaker appeals from the trial court's denial of his motion for new trial following his conviction by bench trial. He challenges the sufficiency of the evidence of his possession of methamphetamine with intent to distribute[1] and alleges that he did not knowingly and intelligently waive his right to a trial by jury.

1. We consider first the sufficiency of the evidence.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the [conclusions of the trier of fact], and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006).

So viewed, the evidence was that, on February 23, 2004, Gwinnett County Officer Marion received information that a male possessing methamphetamine would be at the Admiral Benbow Inn at

---

[1] OCGA § 16-13-30 (b).

the Lawrenceville-Suwanee exit near I-85. The information was that the man would be armed with a firearm and would be driving a white Chrysler with a blue top and license plate number WI120FI. Marion, in an unmarked police car, went to the motel and observed a man later identified as Whitaker and another man, later identified as Alton, get into the Chrysler, with Whitaker driving. Marion followed the Chrysler and observed that Whitaker made at least two turns without using a signal. Marion then had Officer Hurst, in a marked police car, stop the Chrysler.

Hurst approached Whitaker and asked for identification and whether there were any weapons in the car. Whitaker started to reach down, but was told by Hurst to put his hands on the steering wheel. Whitaker then acknowledged that he had a Glock handgun in his waistband. Hurst told Whitaker not to reach for the gun and to get out of the car, which he did. Hurst then removed a .45 caliber Glock from Whitaker's front waistband and continued to pat Whitaker down. Hurst found a .44 Magnum revolver in Whitaker's rear waistband and a .32 caliber semi-automatic revolver on his left ankle. Although Whitaker produced a Georgia firearms license, it had expired. Hurst also found an ASP, an expandable steel baton carried by police officers, on Whitaker. With Whitaker's permission, Hurst removed from Whitaker's jacket pocket a black radio faceplate case and Marion heard a rattle inside it. Based on Marion's training and experience in drug investigations, he believed the case contained a glass pipe for smoking crack cocaine or methamphetamine. Whitaker, when asked, refused to consent to the opening of the case.

Whitaker was placed in the police car and Alton was asked to get out of the car and was patted down. Marion had seen a backpack in the car and Alton acknowledged that it was his. He consented to the officers looking in it and was seated in the police car. Alton asked if he could smoke and was told he could. He then began moving around in what Hurst believed was an effort to conceal something. Asked to show his hands, Alton was reluctant. When he did open his hands, the officers found two small bags of a substance which tested positive for methamphetamine. The total weight of the methamphetamine was 1.4 grams, an amount consistent with personal use, according to the officers.

At that point, Hurst ran a computer check on both men's names and discovered an active arrest warrant for Whitaker. Marion then opened the black case found on Whitaker and discovered a glass pipe and a white crystal substance which tested positive for methamphetamine. The case contained a total of 22.3 grams of methamphetamine. In the trunk of the car, the officers found a 12 gauge shotgun and a safe, which contained a total of 21.25 grams of methamphetamine. Whitaker also had $258 in cash on him. Based on Marion's

training and experience, including over 120 narcotics investigations, the total amount found on Whitaker and in the safe was consistent with possession with intent to distribute.

The evidence of possession of methamphetamine with intent to distribute was legally sufficient. *Best v. State*, 279 Ga. App. 309 (1) (630 SE2d 900) (2006); *Barrow v. State*, 269 Ga. App. 635, 636 (1) (605 SE2d 67) (2004).

2. Whitaker also contends that the trial court erred in denying his motion for new trial because he did not knowingly, intelligently, and voluntarily waive his right to a trial by jury.

Following a hearing on Whitaker's motion to suppress on December 13, 2004, the trial court denied the motion, concluding that the officers had observed a traffic violation and that there was a valid stop of the Chrysler based on this. Through their contact with the car's occupants, the officers developed probable cause to arrest the occupants and search the car. The trial court then inquired whether there would be a plea or a trial, and took a recess so that the matter could be discussed and a decision made. Following the recess, counsel for Whitaker and the State agreed that the court would take the testimony from the motion to suppress hearing, along with several stipulations regarding the makes and calibers of each weapon found on Whitaker, and that the substances found on Whitaker, Alton, and in the safe tested positive for methamphetamine. Whitaker was found guilty on all charges and sentenced.[2]

On April 20, 2006,[3] a hearing was held on Whitaker's motion for new trial. Doug Sexton, Whitaker's trial counsel, testified. Sexton had practiced for 30 years and tried numerous criminal cases. Asked why he did not take Whitaker's case to a jury trial, Sexton testified that, based on his experience, it would have been a waste of time to take a drug case to a jury trial because Whitaker could not win unless he were willing to blame the drugs on Alton, which he was not willing to do. Also, Sexton told Whitaker that, in his professional opinion, the case would be won or lost based on the motion to suppress. He further advised Whitaker that, if they won this motion, the case would be over and, if they lost, they could go with a bench trial and hope the State would "mess something up." Also, there was the possibility of an appeal if the motion were lost.

Sexton further evaluated Whitaker's chances at a bench trial based on his knowledge of the two judges who would possibly hear the

---

[2] Although Whitaker was granted an appeal bond, it was later revoked when he committed a new felony.

[3] The trial court granted new appellate counsel's motions for an out-of-time motion for new trial and appeal.

case. He told Whitaker that either judge would be defense oriented and as fair as a jury. Sexton discussed with Whitaker the advantages and disadvantages of a jury trial and bench trial and also the purpose of a motion to suppress. The possibility of Whitaker's testifying before a jury was also discussed. Following these discussions, Whitaker agreed that the motion to suppress was key.

Sexton said that he and Whitaker had discussed the decision to go with a jury or a bench trial since Sexton had taken the case prior to the hearing on the motion to suppress. Also, following the hearing on the motion to suppress, Sexton and Whitaker further discussed the issue. Whitaker was told by Sexton that a bench trial meant that a jury would not be present and, according to Sexton, Whitaker understood this. The final decision to go with a bench trial, according to Sexton, was Whitaker's.[4] It is acknowledged by the State that no inquiry was made of Whitaker by the trial court concerning this issue.

"While the defendant must personally and intelligently participate in the waiver of the right to trial by jury, there is no legal precedent which requires that waiver be done in court." (Punctuation and footnote omitted.) *Gates v. State*, 252 Ga. App. 20, 22-23 (3) (555 SE2d 494) (2001); *Cooper v. State*, 189 Ga. App. 286, 287 (2) (375 SE2d 505) (1988). In fact, the Supreme Court announced two post-trial methods by which the State could successfully carry its burden of proving a defendant knowingly and intelligently waived his right to trial: (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filing a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and intelligently made. *Roberts v. Greenway*, 233 Ga. 473, 475 (1) (211 SE2d 764) (1975). This Court has even remanded cases for the trial court to conduct a hearing and determine whether the defendant personally, knowingly, intelligently, and voluntarily participated in waiving his right to a jury trial. See, e.g., *Jenkins v. State*, 259 Ga. App. 47, 52 (2) (b) (576 SE2d 300) (2002).

A trial court's determination on the question whether a defendant knowingly, intelligently, and voluntarily waived his right to a jury trial is reviewed under a clearly erroneous standard. *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (568 SE2d 594) (2002).

Here, based on the testimony of Whitaker's trial counsel, there was no clear error in the trial court's conclusion that there was sufficient extrinsic evidence to show that Whitaker knowingly, intelligently, and voluntarily waived his right to a trial by jury and his denial of Whitaker's motion for new trial on this basis. E.g., *Fleming*

---

[4] According to Sexton, Whitaker said, on several occasions, that "you're the expert. So I'll leave it up to you."

*v. State*, 282 Ga. App. 373, 376 (2) (638 SE2d 769) (2006); *Harris v. State*, 269 Ga. App. 234, 235 (603 SE2d 749) (2004); *Gary v. State*, 241 Ga. App. 76, 77 (2) (526 SE2d 148) (1999).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 23, 2007 —
RECONSIDERATION DENIED JUNE 26, 2007.

*Lindsay N. Bennett, Leigh S. Schrope*, for appellant.
*Daniel J. Porter, District Attorney, Niria D. Baggett, Assistant District Attorney*, for appellee.