## A07A0828. ALLISON v. THE STATE.

(654 SE2d 628)

SMITH, Presiding Judge.

Following a bench trial, Keith Allison appeals from his convictions for reckless conduct and possession of a firearm by a convicted felon. Allison asserts that insufficient evidence supports his reckless conduct conviction, that the State failed to prove that he knowingly, voluntarily, and intelligently waived his right to a jury trial, that his right under the Georgia Constitution to be present during trial was violated when his counsel waived his right to a jury trial while he was outside the courtroom, and that the trial court improperly considered his status as a convicted felon when determining his guilt of reckless conduct. For the reasons set forth below, we reverse Allison's reckless conduct conviction and remand the case for a new trial on his remaining conviction.

1. On appeal from his criminal conviction, Allison no longer enjoys the presumption of innocence, and we review the evidence in the light most favorable to the verdict. See *Williams v. State*, 270 Ga. App. 424 (606 SE2d 871) (2004). We do not weigh the evidence or assess witness credibility, but merely determine whether the trier of fact was authorized to find Allison guilty beyond a reasonable doubt. Id.

So viewed, the record shows that Allison's reckless conduct conviction arose from the discharge of a gun in the apartment of Gerald Martin. The bullet traveled in a downward direction through a wall into the adjacent apartment, where it then ricocheted off the floor and a metal door before hitting a two-year-old child in the head.[1] Because the bullet remains in the child's head and cannot be removed, the police could not identify the particular weapon used.

Martin, who was inebriated at the time of the incident, claimed to have a poor memory of it at trial and testified that he had memory problems generally. When first questioned about the incident by police, Martin told them that Allison did not do it and claimed that the shot was fired after he allowed an unknown person into his apartment to use the bathroom.

In a written statement given to police after he had "sobered up" eight hours later and had been told that he would be charged with possession of marijuana, Martin told the officers that Allison came to his apartment to get a bag of clothing. According to Martin's statement, Allison "had a pistol in the clothes bag and he was checking it and it went off." Although Martin was in the kitchen at the time the gun discharged, he claimed it went off when Allison pulled the

---

[1] The child survived the incident, but was permanently injured.

chamber or action back and that the gun was pointed down when it discharged. After the gun fired, Martin heard his neighbor screaming that her baby had been shot. Martin stated that he told Allison, who was leaving, that "the baby had been shot," and Allison told him, "Sorry, man, the gun went off."

At trial, Martin claimed that he did not read very well and signed the written statement in the hope of "getting out." Martin acknowledged that he was in jail for several days after the incident and testified that he was suicidal during that time. Martin also admitted that his son was on probation at the time of the incident, that his son had a room in his house that he kept locked, that his son was in the apartment when the gun discharged, that his son heard the shot, looked scared, and then left. When police searched the son's room, they found 12 pounds of marijuana.

Martin testified that he did not know whether his son might have been the person who discharged the gun and that he really did not know who had the gun, because he was in the kitchen when he heard the shot. When he came into the living room, he saw Allison "just standing there" with "something silver" in his hand that looked like the barrel of a gun.

Allison did not testify at trial. Neither the State nor Allison offered expert testimony about the proper method for checking a weapon, whether Martin's description of Allison's handling of the gun showed reckless conduct, or whether the gun could have discharged accidentally or as the result of a product defect.

Allison contends insufficient evidence supports his reckless conduct conviction.[2] We agree. Reckless conduct is defined as follows:

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

OCGA § 16-5-60 (b).

In this case, the State submitted no evidence that Allison checked the weapon in a manner that represented a "substantial and unjustifiable risk" that he would endanger the safety of another person.

---

[2] Allison does not assert that insufficient evidence supports his conviction for possession of a firearm by a convicted felon, for which he received a sentence of five years in prison, concurrent with his twelve-month sentence of imprisonment for his reckless conduct conviction.

OCGA § 16-5-60 (b). Likewise, there is no evidence showing that Allison knew that the weapon was loaded, that Allison pointed the weapon at another person, that he intentionally fired it, or that he was otherwise aware or conscious that the weapon was going to fire or might fire.

> To sustain a conviction on circumstantial evidence only, the State must prove facts that are not only consistent with the hypothesis of the guilt of the accused, but the facts proved must exclude every other reasonable hypothesis. Circumstantial evidence is worth nothing in a criminal case, if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt.

(Citations and punctuation omitted.) *Williamson v. State*, 191 Ga. App. 388, 389 (381 SE2d 766) (1989).

Here, it could be inferred from the discharge of the weapon that Allison acted recklessly, but it could also be inferred that the weapon discharged accidentally. It is also possible that a product defect caused the discharge. As a result, the circumstantial evidence fails to exclude a reasonable hypothesis of innocence and the State failed to meet its burden of proving that Allison committed the crime of reckless conduct. See *Davis v. Commonwealth*, 204 Ky. 809, 812 (265 SW 316) (1924) (insufficient evidence to support conviction because "no proof in this record of the handling of the pistol by [the] defendant . . . in such a careless manner as to indicate a reckless indifference to the safety of others"); compare *Reed v. State*, 279 Ga. 81, 86 (7) (610 SE2d 35) (2005) (evidence constituted reckless conduct when defendant drove car while his finger was "undisputedly inside the trigger guard" of loaded revolver in close proximity to his intoxicated girlfriend); *Beaton v. State*, 255 Ga. App. 901, 903 (2) (567 SE2d 113) (2002) (evidence sufficient to support reckless conduct conviction when defendant intentionally fired shot through front door knowing that multiple people were outside the house).

The following language in Georgia Supreme Court opinions does not require a different result: "A defendant who handles a gun *in such a way* as to accidentally cause the death of another human being, albeit without any intention to do so, has necessarily committed the misdemeanor of reckless conduct." (Citations and punctuation omitted; emphasis supplied.) *Manzano v. State*, 282 Ga. 557, 559 (3) (a) (651 SE2d 661) (2007); *Cook v. State*, 249 Ga. 709, 712 (4) (792 SE2d 844) (1982). The words "in such a way" should not be interpreted to mean any and all types of gun handling; instead, they should be interpreted to track the reckless intent language of OCGA § 16-5-60 (b).

Therefore, a defendant who handles a gun *recklessly* and accidentally injures another human being is guilty of reckless conduct. An accidental injury caused by a firearm, standing alone, is insufficient to prove the crime of reckless conduct. To hold otherwise would transform the crime of reckless conduct into a strict liability crime — a result contrary to the legislature's intent as expressed through its use of the words "consciously disregard" and "gross deviation from the standard of care" in OCGA § 16-5-60 (b). Cf. *Pool v. State*, 87 Ga. 526, 530-531 (3) (13 SE 556) (1891) ("[t]he law infers guilty intention from reckless conduct").

The facts at issue in *Manzano*, supra, and *Cook*, supra, support this conclusion because, in each case, the evidence affirmatively showed that the defendant handled a firearm recklessly. In *Manzano*, the shooting occurred during "horseplay with the pistol," and the defendant "pulled the trigger while pointing the pistol" at another person's head. 282 Ga. at 558 (2). In *Cook*, the defendant admitted to police that he picked up a gun during an argument with his wife about his interest in other women. 249 Ga. at 710. He first told police that he "got my gun and shot Betty while she was in the bed," but later testified that the gun went off accidentally when he turned around with the gun pointed at his wife. Id.

We recognize that this is a tragic case involving serious injury to a young, innocent child. We cannot, however, allow our sympathy for this child and his family to prevent us from doing our duty to apply the law dispassionately. "Justice is represented as blind, so that she may not know either party, and with a firm hand hold the scales even." *Horne v. State*, 37 Ga. 80, 93 (1867).

2. Allison contends that the State failed to meet its burden of proving that he knowingly, intelligently, and voluntarily waived his right to a jury trial. We agree.

> A defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. A trial court should ask the defendant sufficient questions on the record so that the court can ensure the defendant's waiver is knowing, voluntary, and intelligent.

(Citations and footnotes omitted.) *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002). When a defendant questions the validity of such a waiver,

> the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right

being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citations and punctuation omitted.) *Capelli v. State*, 203 Ga. App. 79 (2) (416 SE2d 136) (1992), overruled in part on other grounds, *Barnes v. State*, 275 Ga. 499, 502 (3), n. 19 (570 SE2d 277) (2002).

Such extrinsic evidence can include: testimony by defense counsel in the motion for new trial hearing about his specific recollections,[3] routine, or standard practices;[4] an affidavit[5] from trial counsel about his specific recollections;[6] and evidence regarding the defendant's intelligence and cognitive ability.[7] In *Capelli*, supra, we found the following extrinsic evidence insufficient to prove a valid waiver: "judicial notice of the fact that the judge's practice is to inform the defendants of their right to a jury trial and that appellants' announcement that they were ready to proceed with trial along with the manner in which they conducted their own trial showed that they were aware of their right to a jury trial and knowingly waived that right." 203 Ga. App. at 79 (2). This court will affirm a trial court's decision that a defendant has made a knowing and intelligent waiver of his right to a jury trial unless it is clearly erroneous. *Whitaker v. State*, 286 Ga. App. 143, 146 (2) (648 SE2d 396) (2007).

In this case, the record does not contain a colloquy between the trial court and Allison about his right to or waiver of a jury trial, nor is there any writing signed by Allison showing that he waived his right to a jury trial. As a result, the State attempts to satisfy its burden of proving that Allison personally, knowingly, voluntarily, and intelligently chose to waive his right to a jury trial through the use of extrinsic evidence.

In the motion for new trial hearing, defense counsel testified that he had been practicing law for over 20 years, with an emphasis in criminal defense work. He testified that he thought a bench trial, instead of a jury trial, was in Allison's best interest, but that he could no longer recall "what [his] reasons were." He did not have a specific recollection of discussing with Allison the decision to waive Allison's right to a jury trial. Although "it would have been [his] standard practice to discuss the waiver of a jury trial with the client," he does

---

[3] *Green v. State*, 279 Ga. 687, 689 (620 SE2d 788) (2005).
[4] *Foskey v. Battle*, 277 Ga. 480, 482 (1) (591 SE2d 802) (2004).
[5] *Dickens v. State*, 280 Ga. 320, 322 (2), n. 2 (627 SE2d 587) (2006).
[6] *Sims v. State*, 167 Ga. App. 479, 480 (1) (306 SE2d 732) (1983).
[7] *Bazemore v. State*, 273 Ga. 160, 162 (1) (535 SE2d 760) (2000).

not, however, do this in every case. He explained that he "probably" discussed the advantages and disadvantages of jury and bench trials with Allison.

Counsel did not recall Allison objecting to a bench trial. Counsel acknowledged that pauses exist in the record and that he had an opportunity during those periods to talk with Allison about the benefits of a bench trial; he did not, however, have a specific recollection of doing so.

Significantly, with regard to who has the right to make the ultimate decision about waiving a right to a jury trial, defense counsel gave this testimony:

Q. If your client objected to a bench trial, you would not have gone forward on a bench trial; isn't that correct?
A. Probably not, but I can't say for certain. I still may have waived the jury trial.
Q. I'm sorry. Say that again.
A. I probably would have acceded to my client's wishes. But I cannot say that I would have made that a certainty.

In defense counsel's opinion, the waiver of a jury trial "is a trial strategy decision made by the attorney"[8] and defense counsel held this opinion at the time of Allison's trial. The record shows that Allison was present when his counsel stated at trial, "*I'm* going to waive the jury on Count 3," the possession of a firearm by a convicted felon charge. (Emphasis supplied.) Defense counsel also believed there was no need for the trial court to have a colloquy with Allison about his decision to waive his right to a jury trial.

At another point in his testimony, defense counsel testified unequivocally that Allison was in agreement with defense counsel's decision to waive a jury trial and that he "had input in his case." He later qualified this testimony, stating that Allison "most likely was in agreement," while also admitting that it was possible he made the decision against Allison's wishes, because he had no specific recollection of his discussions with Allison. On the other hand, because counsel had no recollection of his discussions with Allison, he believed Allison was not "adamantly opposed" to a bench trial, as this was something counsel would have remembered.

In further support of its argument that Allison knowingly waived his right to a jury trial, the State points to evidence of Allison's three

---

[8] In contrast, defense counsel did understand that the decision about whether a client should testify "is his or her decision that I cannot overrule."

previous guilty pleas. Although the record shows that Allison previously pled guilty in 1987, 1989, and 1999 to unrelated charges, it contains evidence demonstrating that Allison was aware of his right to a jury trial for only two of those guilty pleas.

At the conclusion of the motion for new trial hearing, the trial judge, who did not preside over the trial, stated "I think — from the evidence presented, I think that voluntary is there. But the other, knowing, willing, and intelligent are not there that I see." Nonetheless, the trial court reserved ruling on the issue. Nine days later, the State submitted an affidavit from the senior judge who tried the case,[9] which stated in part:

> In all criminal cases, I make certain that a defendant has waived his right to a jury trial before I begin a bench trial.
>
> In all criminal cases, I make certain that the defendant is proceeding with a bench trial freely, voluntarily, and intelligently.
>
> In making this affidavit, I have reviewed the trial transcript of this case. Review of the transcript has refreshed my recollection and I can swear or affirm that there was much discussion that is not reflected in the transcript about the defendant waiving his right to a jury trial that I considered before proceeding with a bench trial. I can also swear or affirm positively from the transcript and my usual custom and practice that I would not have conducted a bench trial had I not personally obtained the consent of the defendant Allison.
>
> Specifically, Allison knew he was giving up his right to a jury trial and consenting to proceed with a bench trial.

After the affidavit was filed, Allison objected to it on the grounds that his due process rights were being violated because he did not have an opportunity to cross-examine the affiant. Two days later, Allison's motion for new trial was denied because the trial judge was "persuaded by the testimony of experienced trial counsel and the affidavit of the very senior trial judge, Hon. Isaac Jenrette, to the effect that

---

[9] The State notified both the trial judge and Allison during the motion for new trial hearing that it planned to supplement the record with such an affidavit and Allison did not object.

neither one of them would have conducted a bench trial without obtaining a voluntary waiver of jury trial from the defendant." The trial court also found that it was

> hard pressed not to find that the defendant knowingly, willingly, voluntarily and intelligently waived his right to a jury trial considering, in addition to the testimony of the trial judge and trial counsel, that the defendant had on at least three different occasions been given his *Boykin* rights and waived them, that he was present at the time a bench trial was announced and made no indication that he had an objection to a bench trial, and when called to the stand to testify on this motion as to whether he, in fact, voluntarily waived a jury trial in participation with his lawyer, he refused to testify.

(a) Because the trial court erred by relying on Allison's previous guilty pleas to find a voluntary, knowing, and intelligent waiver of his right to a jury trial in this case, we must reverse. In several fairly recent opinions, the Georgia Supreme Court has held that guilty pleas from other cases "cannot substitute" for the waiver of constitutional rights in the case at issue. *Bazemore v. State*, 273 Ga. 160, 162 (1) (535 SE2d 760) (2000). See also *State v. Futch*, 279 Ga. 300, 301 (2) (612 SE2d 796) (2005); *Foskey v. Battle*, 277 Ga. 480, 482 (1) (591 SE2d 802) (2004). As a result, we disapprove of any statement to the contrary in *McCollum v. State*, 201 Ga. App. 493, 494 (1) (411 SE2d 328) (1991).

(b) The remaining evidence before the trial court also fails to satisfy the State's burden of proving that Allison knowingly and intelligently waived his right to a jury trial. Defense counsel's announcement that *he* was waiving Allison's right to a jury trial, in Allison's presence, does not suffice to prove a knowing and intelligent waiver. *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002). Instead, "the most that can be said is that the defendant voluntarily waived a jury." Id. Defense counsel's testimony that the decision to waive a jury trial rested with him, *not* Allison, renders the remainder of his testimony insufficient to establish a knowing and intelligent waiver.[10] Defense counsel's belief conflicts with well-established law that a criminal defendant, not his counsel, must make the ultimate choice to waive his right to a jury trial. See, e.g., *Jackson v. State*, 253

---

[10] While we find it puzzling that an attorney with 20 years of experience defending criminal cases would be ignorant of this basic principle, the trial court did not find that this testimony lacked credibility in its ruling on the motion for new trial.

Ga. App. 559, 561 (560 SE2d 62) (2002). This erroneous view of the law forecloses any contention that counsel had a routine or standard practice that met constitutional muster regarding a waiver that counsel did not believe to be required.

The trial court's affidavit also fails to meet the State's burden. At best, it merely establishes that Allison voluntarily waived his right to a jury trial by consenting to it. See *McCormick v. State*, 222 Ga. App. 753, 756 (1) (476 SE2d 271) (1996). It fails, however, to show that Allison's waiver was knowing and intelligent. The senior judge does not summarize the details of his specific colloquy with Allison, and his affidavit contains no details about the specific steps taken by the senior judge in general to "make certain that the defendant is proceeding with a bench trial freely, voluntarily and intelligently." As a result, it is conclusory and cannot establish a valid waiver of the constitutional right to a trial by jury. See *Green v. State*, 279 Ga. 687, 689 (620 SE2d 788) (2005); *Jones v. State*, 260 Ga. App. 251, 252-253 (2) (581 SE2d 315) (2003).

Finally, Allison's refusal to testify in the motion for new trial hearing cannot be used to meet the State's burden of proof. See *McCormick*, supra ("[I]t does not signify that appellant did not testify at this hearing on his motion for new trial, since it is the State's burden first to show a prima facie waiver of jury trial. [Cit.]"). We find no merit in the State's argument that the Georgia Supreme Court's decision in *Roberts v. Greenway*, 233 Ga. 473, 476-477 (3) (211 SE2d 764) (1975), requires a different result. There, the Supreme Court held that a defendant cannot invoke the shield of attorney-client privilege to prevent his trial counsel from testifying about the waiver of his constitutional rights. Id. Using the attorney-client privilege to prevent another person from testifying is very different from invoking the Fifth Amendment right not to incriminate oneself, as perjury may be an issue whenever one testifies under oath.

Because the State failed to meet its burden of proving Allison knowingly and intelligently waived his right to a jury trial, we must reverse the remaining charge against him, possession of a firearm by a convicted felon, and remand this case for a new trial.

3. In light of our holdings in Divisions 1 and 2, Allison's remaining enumerations of error are moot.[11]

*Judgment reversed and case remanded. Barnes, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Ruffin, Miller, Ellington, Phipps, Mikell, Adams and Bernes, JJ., concur.*

---

[11] Allison was not present when his right to a jury trial was waived on the reckless conduct charge, but he was present when his right to a jury trial on the possession charge was waived.

DECIDED NOVEMBER 20, 2007.

*Thomas S. Robinson III*, for appellant.
*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.