**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1384. BUDEANU v. THE STATE.

MILLER, Judge.

Following a bench trial, Petru Budeanu appeals from his conviction of two counts of attempting to entice a child for indecent purposes (OCGA §§ 16-6-5 (a); 16-4-1) and the denial of his motion for new trial, contending that the evidence was legally insufficient and that the record fails to show that he made a knowing and intelligent waiver of his right to a jury trial.

On appeal from a criminal conviction,

> the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt. 2781, 61 LE2d 560) (1979).

(Citation omitted.) *Cordy v. State*, 315 Ga. App. 849 (1) (729 SE2d 13) (2012).

Viewed with all inferences in favor of the trial court's findings, the evidence shows that, in May 2009, C. C., then 14 years of age, and V. A., then 13 years old, lived in the same apartment complex and often spent the night with each other. On May 25th, C. C. and V. A. were walking V. A.'s new puppy in their pajamas around 7:00 or 8:00 a.m. after C. C. had spent the night with V. A. As they were walking, they noticed a white and gray van pull into the neighbor's driveway where they were standing. Thinking that the van was going to park there, the girls walked on to V. A.'s family's driveway in front of her townhome. As they did so, the van backed out of the neighbor's driveway and pulled into V. A.'s family's driveway. Budeanu got out of the van, took a few steps toward them, and asked "[y]ou want sex?" or "[d]o you want to have sex?" The girls began to try to get into V. A.'s family's apartment and knocked hard on the front door. When they were trying to open the door, Budeanu asked their names, then said "[n]o, no, no, don't open the door[,]" and "[d]o you want to have sex?" V. A.'s stepfather opened the door and the girls told him what had happened. When the door opened, Budeanu got in his van and left.

According to V. A.'s stepfather, who is Romanian as is Budeanu, parking places are assigned to the town homes and V. A.'s family's town home was Number 69, located near the rear of the complex. When the stepfather opened the door that day, the girls looked scared and said a guy asked them about sex. V. A.'s stepfather went outside and saw the van pulling off. V. A.'s father did not call the police that day but spoke to them three weeks later after C. C.'s father had called them.

C. C.'s father testified that his family lived in Town Home Number 12, near the front of the complex. C. C.'s father saw the van drive into the complex on the morning of May 25th, while he was out walking his dogs. He had seen the van several times before in his complex and the complex next door. C. C.'s father spoke to Budeanu about two days after the incident with his daughter. He advised Budeanu that he was told that Budeanu asked C. C. to have sex. He told Budeanu "[n]ow, I don't know if it's true or not, but the next time I see you over here me and you are going to have a problem and I advise you to leave." Budeanu responded that he did not do anything, but left anyway. Thereafter, C. C.'s father continued to see the van in the complex. Three weeks after the incident, on June 18th, he followed the van to the rear of the complex, got a license number, and called police.

1. Considering the waiver of jury trial first, we agree with Budeanu that the State failed to prove that he voluntarily, knowingly, and intelligently waived his right to a jury trial.

A defendant's right to trial by a jury is a fundamental constitutional right that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002); *Thomas v. State*, 297 Ga. App. 416, 419 (2) (677 SE2d 433) (2009). "A defendant's consent to a trial without a jury need not be in any particular, ritualistic form; the trial court need only conduct an inquiry of the accused on the record so as to ensure that the waiver is knowing, voluntary and intelligent[.]" (Punctuation and footnote omitted.) *Ealey v. State*, 310 Ga. App. 893, 894 (714 SE2d 424) (2011).

When a defendant challenges his purported waiver of the right to a jury trial, the State bears the burden of showing that the waiver was made both knowingly and intelligently, either "(1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made." (Citations and punctuation omitted.) *Allison v. State*, 288 Ga. App. 482, 485-486 (2) (654 SE2d 628) (2007). This may be done by use of testimony

4

from, or an affidavit of, trial counsel about his specific recollections; routine or standard practices; and evidence regarding the defendant's intelligence and cognitive ability. See id. at 486 (2); *Jones v. State*, 294 Ga. App. 169, 170 (1) (670 SE2d 104) (2008).

There is nothing in the record signed by Budeanu to indicate a waiver of a jury trial. Further, there is no record of any colloquy showing that the trial court asked Budeanu sufficient questions on the record to ensure that his waiver of a jury trial was knowing, voluntary, and intelligent. The trial court's only statement regarding this issue is at the beginning of the bench trial when he states: ". . . it's my understanding, [trial counsel] . . . that your client has previously waived his right to a jury trial and agreed to a trial by the Court sitting without a jury." Trial counsel responded "[t]hat is correct, Your Honor." . Although Budeanu voiced no objection at this point, his failure to object to a bench trial shows, at most, only that such waiver was voluntary, not that it was also knowing and intelligent. See *Jones*, supra, 294 Ga. App. 170 (1); cf. *Balbosa*, supra, 275 Ga. at 575 (1) (when trial counsel waives the right to a jury trial in defendant's presence, it shows only that waiver was voluntary).

Trial counsel testified at the motion for new trial hearing that he discussed with Budeanu the issue of whether to have a jury or bench trial at least twice. Because

5

Budeanu was Romanian and did not speak English well, his family retained an interpreter to attend attorney/client meetings. An interpreter also participated in his trial. According to trial counsel,

> I don't really think Mr. Budeanu had a preference. He might not have understood exactly what was going on. I understood what was going on, and I think [the interpreter] did, too. And that's why - - *it wasn't a clear cut answer; the decision was not clear cut.* There were advantages and disadvantages of both sides. So he pretty much just paid attention to what I said through [the interpreter] and asked questions.

(Emphasis supplied.)

Asked if he had ever explained his rights to Budeanu, trial counsel stated that "I did not really discuss with him. I just told him that we could do it either way. I did not ever tell him that - - distinguish where those rights came from, whether they were statutory or constitutional or by precedent. I just told him we would do it either way and we had to decide; it was an important issue to decide."

Appellate counsel asked trial counsel at the motion for new trial hearing "[a]s I understood your testimony and in our discussions previously, you're very clear that you never told Mr. Budeanu that he had a constitutional right to a jury trial; is that correct?" Trial counsel responded: "I did not tell him that, no."

6

The record is devoid of any testimony from trial counsel indicating that Budeanu understood that he had a right to a jury trial and made a conscious choice to waive that right. Cf. *Jones*, supra, 294 Ga. App. at 170 (1) (having discussions with trial counsel are, alone, insufficient to establish that defendant knowingly and intelligently waived right to jury trial). As stated above, the trial court's only comment on the issue of waiver was to note that Budeanu had previously waived his right to a jury trial. There was no inquiry by the trial court as to his understanding of his rights or the ramifications of the waiver.

In the absence of a written waiver, colloquy with the trial court, or any extrinsic evidence of a waiver, the State failed to meet its burden of proving that Budeanu knowingly and intelligently waived his right to a jury trial. Therefore, we reverse his convictions of enticing a child for indecent purposes.

2. We now consider whether Budeanu may be retried on these charges.

"[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Ricketts v. Williams*, 242 Ga. 303 (248 SE2d 673) (1978). "[I]t makes no difference whether the decision on the insufficiency of the evidence is made by the trial court or the reviewing court. The result is the same. . . ." Id. at 303-304. However, "[a]s a general rule, a

7

post-conviction reversal or grant of a motion for new trial which is not based on insufficiency of the evidence does not preclude retrial." (Citation omitted.) *State v. D'Auria*, 229 Ga. App. 34, 35 (492 SE2d 918) (1997). Thus, if "the evidence meets the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SCt. 2781, 61 LE2d 560) (1979)] the case may be retried." *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

"A person commits the offense of enticing a child for indecent purposes when he solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5. The offense of enticing includes the element of asportation which is satisfied regardless of whether the taking involves physical force, enticement, or persuasion. *Cimildoro v. State*, 259 Ga. 788, 789 (1) (387 SE2d 335) (1990).

A person is guilty of criminal attempt if "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward commission of that crime." OCGA § 16-4-1.

Budeanu argues that the State failed to present *any* evidence of the element of asportation, which is essential for a conviction of enticing a child for indecent purposes under OCGA § 16-6-5 (a). *Cimildoro*, supra, 259 Ga. at 789 (1).

8

The trial court, in denying Budeanu's motion for new trial on insufficiency of the evidence, stated, regarding defense counsel's argument that there was no evidence of asportation, "[w]hile this is true, the defendant was charged not with enticing a child, but with criminal attempt to entice a child. *Evidence of asportation is not necessary to support a conviction of criminal attempt* to entice a child for indecent purposes. *Dennard v. State*, 243 Ga. App. 868 [(534 SE2d 182)] (2000)."

This statement by the trial court is incorrect under the law. A review of *Dennard* reveals that the italicized portion of the trial court's ruling is not the holding of *Dennard*. That case involved the appeal of the denial of Dennard's special demurrer to the indictment. Count 3 of the indictment charged Dennard with attempting to commit the offense of enticing a child for indecent purposes "in that he arranged a meeting via the internet with a child under 16 years of age, *to come to a place*, for the purpose of child molestation or engaging in an indecent act." *Dennard*, supra, 243 Ga. App. at 873 (c). Dennard contended that the indictment was fatally defective in that it failed to allege asportation, an essential element of the crime of enticing a child for indecent purposes. This Court found that

the fact that something is an element of the completed offense does not mean that it is an element of the offense of criminal attempt. The

9

relevant question is whether the defendant took a substantial step toward commission of a crime. With respect to the crime of enticing a child for indecent purposes, it is immaterial whether the asportation element is achieved through the use of 'physical force, enticement, or persuasion.' Thus, *if the intended victim had responded to Dennard's enticement by proceeding to the arranged meeting place, the element of asportation* would have been satisfied. Although the indictment does not allege actual asportation, it does allege that *Dennard arranged to meet the victim for the purpose of committing indecent acts.* Accordingly, we cannot say that the indictment fails to allege the taking of a substantial step toward commission of the crime.

(Punctuation and footnotes omitted; emphasis supplied.) *Dennard*, supra, 243 Ga. App. at 873-874 (c).

The indictment against Budeanu alleges criminal attempt to entice a child for indecent purposes in that, with regard to each victim, "on or about the 25th day of May, 2009, with the intent to solicit, entice or take any child under the age of 16 years, for purposes of child molestation or indecent acts, said accused performed an act which constitutes a substantial step toward commission of said crime, to wit: did verbally solicit [the victims] to engage in sexual intercourse . . . ."

Here, the indictment does allege the intent to "solicit, entice, or take" the victims (i.e., asportation) and, therefore, this indictment would be sufficient under

10

*Dennard*. The pertinent issue here, however, is whether the evidence adduced was legally sufficient to prove a substantial step toward committing a violation of OCGA § 16-6-5 (a). We find that it was.

Following issuance of *Heard v. State*, 317 Ga. App. 663 (731 SE2d 124) (2012), Budeanu asked the trial court to reconsider its decision regarding asportation in light of that case. There, a conviction of attempt to commit enticing a child for indecent purposes was overturned because defendant's text message requesting that the victim send him a naked picture would not satisfy the element of asportation because the request did not attempt to entice or persuade the victim to go to another place. This Court held that "[w]ithout evidence that Heard attempted to move the victim 'any place whatsoever,' the State failed to prove that Heard possessed the requisite intent to commit the crime of enticing a child and that he took a substantial step toward committing that crime." *Heard*, supra, 317 Ga. App. at 666.

In response to the motion for reconsideration, the trial court found that "it was reasonable, based on the evidence offered at trial, for the finder of fact to find that by propositioning the children how and where he did, [Budeanu] showed his intent to commit the underlying crime, while at the same time taking a substantial step toward commission of that crime."

"Both this Court and the Supreme Court of Georgia have held that the element of 'soliciting, enticing, or taking' of a child requires asportation - i.e., to satisfy this element of the crime, the evidence must show some movement of or by the child." (Citations and punctuation omitted.) *Tudor v. State*, 320 Ga. App. 487, 490-491 (2) (740 SE2d 231) (2013) (Evidence that, in response to defendant's direction, child moved from living room couch to kitchen table, where defendant molested her, was sufficient to prove enticing a child.).

Here, the evidence showed that Budeanu asked the girls if they wanted to have sex. When they attempted to flee to the apartment, he tried to dissuade them by saying "no, no, no" and again asked if they wanted to have sex. We believe that a rational trier of fact could reasonably infer that Budeanu was attempting to entice or persuade the girls to move away from the apartment door and go to another place to have sex with him, such as his van. Certainly, Budeanu did not intend to follow the girls into the apartment or to have sex with them where they stood at the apartment door. A jury could reasonably infer that Budeanu was trying to lure the girls somewhere else based upon his words and actions. Therefore, we find that there was at least some evidence that Budeanu took a substantial step toward enticing the two girls for indecent purposes, and, as a result, there is sufficient evidence to authorize a retrial. *Jackson*

12

*v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Heard*, supra, 317 Ga. App. at 666.

*Judgment reversed. Barnes, P. J., concurs. Ray, J., concurs fully as to Division 1 and in the judgment only as to Division 2.*