S01A1301. PRUITT v. THE STATE.
(559 SE2d 470)

FLETCHER, Chief Justice.

A jury convicted Tony Lamar Pruitt of malice murder in connec-

---

[5] *Smiley v. State*, 271 Ga. 734, 735 (2) (524 SE2d 234) (1999).

tion with the 1978 shooting death of 13-year-old Lisa Garrish.[1] In 1995, the investigation into Garrish's death was reopened when Pruitt's former wife informed police that nine years earlier Pruitt told her that he killed Garrish. The primary issue on appeal is whether the trial court correctly permitted Pruitt's ex-wife to testify that she came forward in 1995 because Pruitt had been molesting her daughter. Because the trial court did not abuse its discretion in permitting relevant testimony about the witness's reason for her belated reporting of Pruitt's admission, we affirm.

1. In 1978, 14-year-old Tony Pruitt lived with his parents next door to Lisa, her father, and her 16-year-old brother Michael in Habersham County. The school bus dropped Tony and Lisa off on their road at 3:30 on the afternoon she died, and Lisa spoke with her brother before he left to pick up a friend on his way to work. Just before 4:00 p.m., when Michael was clocking in at his job, a neighbor who lived across the street from the Garrish house heard what he thought was a scream. Lisa's father arrived home at 4:30 and discovered Lisa lying on his bedroom floor. She had been shot four times with a .38 caliber revolver, and her chin and hand were cut. Police found bloodstains going from the den to the kitchen and then through the living room to the back bedroom. Around 5:30 p.m., canine handlers used two track dogs to pick up a trail 125 to 150 yards behind the Garrish residence, following the track to the creek and eventually to the back of the Pruitt residence. The track was less than four hours old. Later that evening, Mr. Garrish discovered that his .38 caliber Charter Arms pistol was missing from his bedroom closet. It was never found.

The state presented two witnesses who testified that Pruitt told them he killed Lisa Garrish. Pruitt's former wife, Mary Sanders, testified that Pruitt told her he had been keeping a close watch on Lisa and everybody in the neighborhood that afternoon; he knew a gun was located in a box in the back bedroom closet because he had been in the house many times without anybody's knowledge. He said he killed Lisa because he wanted to have sex with her and she refused him. He hid the gun under a rock in the spring behind the house, but later disposed of it. One of the defendant's friends also testified that Pruitt told him at a party in the 1990's that he had killed Lisa, and the friend had a conversation with Sanders about the subject before

---

[1] The shooting occurred on November 1, 1978, but Pruitt was not indicted until November 25, 1998. A jury found him guilty and the trial court sentenced him to life imprisonment on November 29, 2000. Pruitt filed a motion for a new trial on December 12, 2000, which was denied on March 14, 2001. Pruitt filed a notice of appeal on April 9, 2001. The case was docketed in this Court on May 24, 2001, and submitted for decision based on briefs on July 16, 2001.

she divorced Pruitt.

Pruitt's defense at trial was that Lisa's brother killed her. Pruitt presented evidence that on the day of the murder Michael had been drinking and smoking marijuana, he did not ask questions or show any emotion about his sister's death, and he told the investigating officer who accused him of the murder during an acrimonious interview, "Well if I did [do it], I don't remember it." After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Pruitt guilty of the crime charged.[2]

2. Pruitt contends that he was denied a fair trial when the state was allowed to introduce evidence about an unrelated child molestation charge.[3] He argues that his former wife's prejudicial testimony improperly placed his character into evidence and was inadmissible hearsay.

(a) Evidence that is relevant and material to an issue in a case is not made inadmissible because it incidentally places the defendant's character in issue.[4] Addressing a similar issue in *Price v. State*,[5] we concluded that the trial court did not abuse its discretion in admitting testimony about a violent relationship between the defendant and his girlfriend to explain her ten-week delay in reporting the crime. We reasoned that the probative value of the witness's testimony in explaining her delay outweighed its prejudicial effect in showing the defendant's propensity for violence.

Similarly, we conclude in this case that the probative value of Sanders' testimony in explaining her reason for reporting the crime after years of silence outweighed its prejudicial effect in placing the defendant's character into evidence. As the state's primary witness against Pruitt, Sanders' credibility was a key issue at trial. Defense counsel challenged her story as problematic, cross-examined her about her delay in coming forward, and suggested that she fabricated the story about the murder to hurt her ex-husband. Her motive for waiting nine years, as well as her motive for finally reporting the crime in 1995, were factors for the jury to consider in weighing her credibility. Therefore, we reject the defendant's contention that her testimony about why she went to police in 1995 was irrelevant.

(b) OCGA § 24-3-2 provides that hearsay evidence may be admitted to explain motive or a course of conduct. Unlike the cases cited by the defendant, this case does not involve statements made to a police

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Pruitt v. State*, 243 Ga. App. 423 (532 SE2d 741) (2000) (denying an out-of-time appeal for conviction for child molestation and related crimes).

[4] See *Givens v. State*, 273 Ga. 818, 821 (546 SE2d 509) (2001).

[5] 269 Ga. 373 (497 SE2d 797) (1998).

officer that were admitted to explain his conduct.[6] As we recently reiterated, hearsay testimony explaining an investigating officer's conduct is rarely admissible because the officer's reason for initiating or continuing an investigation is not generally a relevant inquiry at trial.[7] In contrast, the motive and conduct of the witness who first links a suspect directly to the crime often are relevant. Because the reasons that Sanders delayed nine years in reporting her husband's confession and finally went to police in 1995 were relevant issues for the jury to consider, we conclude that the trial court did not abuse its discretion in allowing her testimony about the child molestation claim under OCGA § 24-3-2.

3. Pruitt also challenges the trial court's ruling excluding portions of a written report by a psychic who was not available to testify at the trial. Because the psychic's report failed to satisfy the reliability requirement of the necessity exception to the hearsay rule,[8] the trial court did not abuse its discretion in excluding statements by Michael Garrish that were included in the report.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 4, 2002.

*Kenneth D. Kondritzer*, for appellant.

*Michael H. Crawford*, District Attorney, *Thurbert E. Baker*, Attorney General, *Madonna M. Heinemeyer*, Assistant Attorney General, for appellee.

---

[6] See *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984); *Anderson v. State*, 252 Ga. 103 (312 SE2d 113) (1984).

[7] See *White v. State*, 273 Ga. 787, 788 (546 SE2d 514) (2001) (citing *Teague*, 252 Ga. at 536).

[8] See *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998).