## S04A1511. REED v. THE STATE.

### (610 SE2d 35)

HINES, Justice.

Ronald Reed was convicted of malice murder, cruelty to a child in the second degree, possession of a firearm during the commission of a felony, and tampering with evidence in connection with the fatal shooting of his sometime girlfriend, Dawn Nowakowski, in the presence of her young daughter. Reed appeals, claiming error in the rejection of his *Batson* challenges, the admission of evidence of a prior difficulty with the victim, the exclusion of certain evidence, the omission of a portion of the jury instruction regarding the voluntariness of Reed's statement, and the failure to charge the jury on misdemeanor involuntary manslaughter. For the reasons which follow, we affirm Reed's convictions.[1]

The evidence construed in favor of the verdicts showed that on October 13, 2002, Reed made a trade with his brother, exchanging his truck for a .38 caliber revolver and a car. The revolver was unloaded and Reed was given a bag of bullets. Reed stated that he was going to hide the weapon from his girlfriend, Dawn Nowakowski. Later that day, Reed drove his newly acquired car on Highway 78 in Walton County with Nowakowski seated in the front passenger seat and her two-year-old daughter seated in the rear. While behind the steering wheel, Reed pointed the loaded revolver at Nowakowski and pulled its trigger two times, fatally wounding her once in the left temple. Reed threw the revolver out of the window of the moving car. Despite having a cell phone with him in the car, Reed did not call 911. As the child cried in the back seat, Reed drove past the road which he knew led to the local hospital, and instead, went to his father's house. His father summoned emergency personnel, who detected that Nowakowski had a faint pulse before she died.

Reed and Nowakowski frequently quarreled, and they had been arguing on the day of the shooting.

At trial, Reed claimed the shooting was an accident, explaining that he was showing his girlfriend the revolver when she grabbed the

---

[1] The crimes occurred on October 13, 2002. On November 8, 2002, a Walton County grand jury indicted Reed for malice murder; two counts of felony murder while in the commission of aggravated assault; two counts of aggravated assault; cruelty to a child in the second degree; possession of a firearm during the commission of a felony; and tampering with evidence. Reed was tried before a jury August 11-14, 2003, and found guilty of all charges. By sentence dated August 15, 2003, and filed August 27, 2003, he was given life imprisonment for malice murder, twelve months in prison for cruelty to a child in the second degree, five years in prison for the firearm possession, and twelve months in prison for tampering with evidence; all sentences were to be served consecutively to each other. A motion for new trial was filed on August 20, 2003, amended on August 22, 2003, and on November 3, 2003, and denied on May 3, 2004. A notice of appeal was filed on May 3, 2004, and the appeal was docketed in this Court on May 13, 2004. The case was orally argued on September 20, 2004.

weapon, causing it to discharge. He claimed her erratic behavior was caused by her being under the influence of drugs.

A state firearms expert testified the revolver was outfitted with a hammer block preventing it from firing unless pressure was applied to the trigger. When police recovered the revolver, the hammer was resting on an empty chamber next to the chamber containing a spent brass shell, indicating the revolver's cylinder was advanced after the fatal shot.

1. The evidence was sufficient to enable a rational trier of fact to find Reed guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Reed contends that the trial court erred in overruling his challenges, pursuant to *Batson*[2] and its progeny, to the State's striking of two potential male jurors based upon alleged gender bias. Five of the State's peremptory challenges were used to strike members of the venire who were male. Reed concedes that the State's exercise of three of these strikes was for gender-neutral reasons. However, Reed asserts that the State's explanations for the strikes against the remaining two men were suspect. But the assertion is unavailing.

The State explained that it struck the first venireman at issue because he was not a gun owner, his mannerisms were strange, and because he appeared to be less attentive than some of the other prospective jurors. Reed complains that the record does not support the statement that the man did not own a gun, and that such a stated basis for striking him was also questionable because the State selected other men that did not own guns. First, the record bears out that the venireman indicated that he did not own a gun. Moreover, the lack of gun ownership was not the only stated basis for the strike. The State also objected to the man's perceived inattentiveness and his mannerisms, which are plainly gender-neutral reasons for exercising the strike. See *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996); *Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996).

As to the other venireman in question, the State explained that it struck the individual because he served in the infantry in Vietnam from 1966 to 1968 and that he very likely could have killed someone in combat. Reed complains that the venireman was never identified as having had military service. However, the State's assertion to the trial court about the man's military service went unchallenged by Reed. Accordingly, Reed's present complaint fails to provide a basis

---

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

for appeal. *Smith v. State*, 277 Ga. 213, 219 (14) (586 SE2d 639) (2003).

The trial court's denial of Reed's *Batson* motion based on alleged gender bias was not clearly erroneous. *Johnson v. State*, supra at 777 (4).

3. The State introduced into evidence an audiotaped police interview with Reed, in which Reed mentions, inter alia, an altercation he had with the victim approximately two months before the shooting, which resulted in the police being called and citations issued to both parties. At trial, Reed objected to admission of the evidence of the altercation on the bases that it improperly placed his character in issue and that it was irrelevant. Citing *Felder v. State*, 266 Ga. 574 (468 SE2d 769) (1996), Reed now contends that the trial court erred by allowing introduction of the evidence, because it was contained in what he characterizes as his exculpatory statement. However, such contention is without merit.

*Felder v. State* does not bar admission of the evidence. In *Felder*, this Court merely rejected the State's assertion that a police reference to Felder's parole was admissible on the basis that it was made in the context of an inculpatory statement or confession. Id. at 575 (2). It does not address the situation in this case. As to any claim that the evidence was not relevant,

> [e]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

*Lance v. State*, 275 Ga. 11, 19 (16) (560 SE2d 663) (2002), quoting *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Finally, any objection to admission of the evidence on the ground that it improperly placed Reed's character in issue fails as well. "Evidence that is relevant and material to an issue in a case is not made inadmissible because it incidentally places the defendant's character in issue." *Pruitt v. State*, 274 Ga. 708, 710 (2) (a) (559 SE2d 470) (2002).

4. Reed next contends that the trial court erred in refusing to allow him to cross-examine the victim's friend, Williams, about whether the victim was under the influence of drugs when Williams saw her earlier on the day of the shooting. Reed sought to have

Williams testify that Nowakowski was "probably" under the influence of drugs. The trial court would not allow the defense to elicit speculation from the witness about drug usage by the victim because the witness had not observed the victim using drugs at the time of the encounter, and because at that time any such drug usage had not been shown to be relevant to the issues on trial. The trial court did however allow the witness to testify about what he observed in regard to the victim's appearance and conduct.

The trial court correctly refused to allow the testimony because it would have been merely speculative. *Wilson v. State*, 274 Ga. 637, 639 (4) (555 SE2d 725) (2001).

5. Reed also contends the trial court erred by excluding photographs of the contents of the victim's purse, which allegedly showed a quantity of methamphetamine, and testimony of the police officers that found the purse. He urges that he sought to introduce such evidence to "impeach the scope and quality of the investigation and as part of the *res gestae*." But the trial court did not err in refusing to allow the evidence.

First, regardless of the intended purpose for the introduction of the evidence by the defense, the substance taken from the purse was never tested to determine its identity, nor was it present at trial for evaluation by the jury. Compare *Smith v. State*, 276 Ga. 97, 99 (6) (575 SE2d 450) (2003). Thus, the claim that it was methamphetamine was merely speculative, as was the assertion that it was probative because its presence in the victim's purse indicated that she was on methamphetamine at the time of the fatal shooting. Even assuming arguendo that evidence of the unidentified substance was probative on the question of the victim's drug usage, its exclusion would have to be deemed harmless inasmuch as shortly thereafter the jury heard evidence that the testing of the victim's blood at the time of autopsy revealed the possible presence of amphetamines. See *Marshall v. State*, 275 Ga. 740, 743 (5) (571 SE2d 761) (2002).

Lastly, as to the claim that the photographs of the alleged drugs and the police testimony were admissible for the purpose of attacking the quality of the police investigation, here again, there was no evidence regarding the identity of the substance which could lead to the conclusion that the police failed to test an obvious quantity of drugs.

6. Relying on *Barrow v. State*, 235 Ga. 635 (221 SE2d 416) (1975), Reed complains that the trial court erred in omitting a portion of the jury instruction regarding the voluntariness of his statement to police.[3] However, the complaint is of no avail.

---

[3] It is unclear from Reed's appellate brief which of his statements is at issue. Reed first

Initially, Reed orally requested that the trial court charge the jury that it could decide whether his initial statement to police was freely and voluntarily given.[4] It has been held that in the absence of a written request, it is not error to fail to charge on the issue of the voluntariness of an inculpatory statement. *State v. Sears*, 202 Ga. App. 352, 354 (6) (414 SE2d 494) (1991). Moreover, after discussion with counsel, the trial court stated that it would instruct the jury that before it could consider a statement the defendant allegedly made after arrest, it had to answer questions about the statement's voluntariness and constitutionality. Reed agreed. Thereafter, the trial court charged the jury in precisely the manner it had indicated it would.[5] Compare *Barrow v. State*, supra at 642 (11). Lastly, even assuming arguendo, that the trial court should have given additional instructions on the voluntariness of an inculpatory statement, the omission would provide no basis for reversal of Reed's convictions because of the evidence establishing that Reed's statements were voluntary and the overwhelming evidence of his guilt. *Robinson v. State*, 272 Ga. 752, 754 (2) (533 SE2d 718) (2000).

7. Finally, Reed contends that the trial court erred in failing to give, as he requested, a jury charge on misdemeanor involuntary manslaughter. Reed argues that his trial testimony, supported by evidence of the victim's drug use and behavior, justified the giving of the charge. But that is not the case.

A person commits the offense of misdemeanor involuntary manslaughter when the person "causes the death of another human being

---

made a statement to police when they encountered him on his father's porch. Later, Reed waived his *Miranda* rights and provided statements to police during police interviews.

[4] Reed's counsel stated,

There's a pattern charge that says, the Judge could read probably better here, it just merely says, the basis of it I think is that the jury can decide whether or not the statement itself was freely and voluntarily given based on the evidence given. Kind of like that. I don't know.

[5] The court charged:

A statement that the defendant allegedly made after arrest has been admitted into evidence. Before you may consider this as evidence for any purpose, you must answer two questions. First, was the defendant warned of his constitutional rights, and second, did the defendant clearly understand and knowingly give up such rights. Those constitutional rights that must be explained and that must be understood and given up by the defendant before any statement is taken up by the police are as follows: The defendant has a right to remain silent. If the defendant chose not to remain silent, anything he said could be used as evidence against the defendant in court. The defendant had a right to consult a lawyer before any questioning and to have the lawyer present with him at all times during any questions. And, if the defendant did not have money for a lawyer, a lawyer would have been provided for him to represent him or her before any questioning and to be present with him during any questioning.

without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." OCGA § 16-5-3 (b).

"A charge on involuntary manslaughter is not warranted even if it is the sole defense if the evidence does not support the charge." *Folson v. State*, 278 Ga. 690, 693 (4) (606 SE2d 262) (2004), quoting *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991). Reed claimed that the revolver accidentally discharged,[6] and the jury was charged on the defense of accident. Reed asserts he also had a right to a charge on misdemeanor involuntary manslaughter because displaying the revolver was a lawful act, which was done in an unlawful manner by having his finger "on or near" the trigger.

But Reed's admitted conduct was not a lawful act. By Reed's own account, he produced and displayed a loaded revolver in close proximity to his girlfriend, who allegedly was under the influence of drugs, and her young child as he drove down a highway; his finger was undisputedly inside the trigger guard as he "was watching the road trying to drive." This constitutes the crime of reckless conduct. OCGA § 16-5-60 (b); *Raines v. State*, 247 Ga. 504, 507 (3) (277 SE2d 47) (1981) (defendant holding a loaded gun in circumstances in which defendant lacked physical stability, resulting in fatal shooting of wife, constitutes reckless conduct). Accord *Ward v. State*, 252 Ga. 85, 88 (1) (311 SE2d 449) (1984). As this Court stated in *Cook v. State*, 249 Ga. 709, 712 (4) (292 SE2d 844) (1982),

> a defendant who handles a gun in such a way as to accidentally cause the death of another human being, albeit without any intention to do so, has necessarily committed the misdemeanor of reckless conduct, [OCGA § 16-5-60 (b)], and is not, therefore, engaged in the commission of a lawful act and is not entitled to a charge under [OCGA § 16-5-3 (b)].

Consequently, Reed was not entitled to a charge on misdemeanor involuntary manslaughter, and there was no error in the trial court's rejection of the requested instruction. *Folson v. State*, supra at 693 (4).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 7, 2005.

*John T. Strauss*, for appellant.

---

[6] Reed testified, "But I pulled, I reached in there to show her the gun, and I had it up like this. . . . And out of the corner of my eye, I seen her come up out of the seat and grab my hand."

*W. Kendall Wynne, Jr., District Attorney, Marcy H. Gonzalez, James P. Blum, Jr., Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.