**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 5, 2013**

# In the Court of Appeals of Georgia

A12A2134. ALFORD v. THE STATE.

BARNES, Presiding Judge.

Based upon allegations that he sexually abused his girlfriend's two daughters, Jorris Nemoy Alford was tried before a jury and convicted of one count of child molestation and two counts of sexual battery against a child under the age of 16. Alford moved for a new trial, contending that he received ineffective assistance from his trial counsel. The trial court denied his motion following an evidentiary hearing. On appeal, Alford contends (1) that the trial court erred in overruling his objection to testimony elicited from one of his girlfriend's daughters which he contends was hearsay, irrelevant, and improper bolstering, and (2) that his trial counsel was ineffective for failing to object to improper bolstering testimony elicited from a school teacher. For the reasons discussed below, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Vadde v. State*, 296 Ga. App. 405 (674 SE2d 323) (2009). So viewed, the evidence showed that Alford started dating his girlfriend in the 1990s when her daughters, E. S. and I. S., were in elementary school. Alford subsequently moved in with his girlfriend and her family in their apartment in Clayton County.

In 2003, Alford began sexually abusing E. S. She was in the seventh grade and 12 years old. Alford would touch her buttocks, touch and suck on her breasts, and touch her vagina over and under her clothes when her mother and other family members were away from the apartment or in another room. Alford sexually abused E. S. three or four times a week until she and her sister first reported the abuse to school officials in February 2009, when E. S. was a high school senior and 17 years old.

E. S. was approximately two years older than her sister I. S. In 2005, when I. S. was in the sixth grade and 11 or 12 years old, Alford began sexually abusing her as well. Alford would touch I. S. on her buttocks, touch and suck on her breasts, and touch her vagina when no one else was around in the apartment. As with E. S., Alford sexually abused I. S. "[a]bout every other day or so" until the girls made their initial

outcry to school officials in February 2009, when I. S. was in tenth grade and about to turn 16 years old.

Up to February 2009, E. S. and I. S. had kept the abuse a secret. E. S. had felt ashamed and scared, had not known what to do, and had "just want[ed] to forget everything and look past it." She also knew that her mother loved Alford, and she did not want to hurt her mom emotionally by telling her that Alford was abusing her. I. S. likewise did not want to upset her mother and told no one of the abuse for a long time, except in a note she wrote to her sister approximately six months to a year before the girls made their initial outcry to school officials. Upon reading the note, E. S. felt that she had failed in protecting her sister and chose not to resist Alford's sexual advances in hopes that he would leave I. S. alone.

Despite having reservations about disclosing the abuse, I. S. broke down crying in front of her tenth grade teacher in February 2009 and repeatedly told her, "I can't take it anymore." I. S.'s teacher took her to the school counselor's office, where I. S. disclosed that Alford was sexually abusing her. When E. S. learned that I. S. was meeting with the counselor, she came into the counseling session and disclosed that she too was being sexually abused by Alford. E. S. and I. S. thereafter provided written statements to the police and spoke with a forensic interviewer.

3

Alford was arrested and indicted for multiple felony offenses arising out of the sexual abuse allegations. At the ensuing jury trial, E. S. and I. S. testified to the events as discussed above. E. S. was 19 years old at the time of trial, and I. S. was 17 years old. I. S.'s tenth grade teacher and the school counselor also testified. Additionally, the police detective assigned to the case testified about her investigation into the sexual abuse allegations.

Alford chose to testify in his own defense. He denied having sexually abused the girls and accused them of fabricating the allegations. He suggested that the girls had decided to make up the abuse allegations when their mother changed the family dynamic after he had lived at the apartment for several years by placing him in charge of their discipline, because up to that point "they were used to their mom doing all the disciplining." He also suggested that the girls made up the abuse allegations "because they didn't like the idea that their mom had someone else instead of their father."

After hearing all of the testimony, the jury convicted Alford of one count of child molestation for the sexual abuse of I. S. and two counts of sexual battery against a child under the age of 16 for the sexual abuse of each girl.[1] The trial court merged

---

[1] The trial court directed a verdict of not guilty as to two counts of child molestation, attempted aggravated sexual battery, and aggravated child molestation because the indictment inexplicably failed to name Alford as the person who

4

the count for the sexual battery of I. S. into the child molestation count and sentenced Alford to 25 years, with 5 years to serve in confinement and the remainder probated. Alford then filed a motion for new trial alleging that his trial counsel had rendered ineffective assistance. Following an evidentiary hearing, the trial court denied Alford's motion, resulting in this appeal.

1. Although not enumerated as error, we conclude that the evidence was sufficient for a rational jury to find Alford guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "Questions concerning the weight of the evidence and credibility of the witnesses were for the jury to decide." *Johnson v. State*, 289 Ga. App. 206, 208 (656 SE2d 861) (2008).

2. Alford maintains that the trial court erred in overruling his hearsay, relevancy, and bolstering objections to testimony elicited from E. S. by the State about her reaction to the note written to her by I. S. We disagree.

During her direct-examination, the State asked E. S. whether, before they made their outcry to school officials in February 2009, there had ever been a time when she

---

committed those offenses. The jury acquitted Alford of child molestation and sodomy counts in which E. S. was the alleged victim.

and I. S. had discussed Alford's molestation of I. S. The State made clear in asking the question that E. S. was not to disclose the specifics of what had been said during any discussion that had occurred. E. S. responded, "Only once," and then went on to describe an incident at night when I. S. was crying and upset, came into her bedroom, and showed her a sheet of paper on which I. S. had written "he molested me." Defense counsel objected to E. S.'s testimony about the content of the note on hearsay grounds, and the trial court sustained the objection and struck the testimony after the State agreed it was hearsay.[2]

The State then asked E. S. about her reaction to the note written by I. S., and E. S. responded that she felt that she had "failed as an older sibling." Defense counsel objected to the testimony about E. S.'s reaction to the note on the grounds that the State was trying to bypass the trial court's previous hearsay ruling. According to defense counsel, E. S.'s testimony about her reaction to her sister's note was inadmissible hearsay that improperly bolstered the veracity of I. S. The State

---

[2] The State did not attempt to have the contents of the note admitted under the Child Hearsay Statute, OCGA § 24-3-16, apparently agreeing with the defense that I. S. was not under the age of 14 when she wrote the note. See generally *Foster v. State*, 216 Ga. App. 26, 28 (2) (453 SE2d 482) (1994) (Child Hearsay Statute limited to statements made by a child under the chronological age of 14 at the time of the alleged act).

responded that E. S.'s reaction to the note was admissible to explain her conduct, leading defense counsel to argue that the reasons for her conduct were not relevant under the circumstances of this case. The trial court overruled defense counsel's hearsay, relevancy, and bolstering objections. E. S. then proceeded to testify that in reaction to the note, she cried until she fell asleep and allowed Alford to "go ahead" and touch her when he made sexual advances "cause [she] thought that maybe he would leave [I. S.] alone."

"As a general rule, the admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." *Maddox v. State*, 278 Ga. App. 191 (2) (628 SE2d 625) (2006). We conclude that the trial court acted within its discretion in overruling defense counsel's hearsay, relevancy, and bolstering objections to E. S.'s testimony about her reaction to the note from I. S. In explaining why the trial court committed no error, we will address the three objections each in turn.

(a) *Hearsay.* First, the trial court acted within its discretion in overruling defense counsel's hearsay objection to E. S.'s testimony about her reaction to the note because the actual contents of the note had already been stricken from the record. Given that the actual substance of the note had been excluded from evidence, no

7

hearsay was before the jury for its consideration. See *Page v. State*, 256 Ga. 191, 192 (5) (345 SE2d 600) (1986) (no hearsay elicited from witness where objection sustained and contents of conversation excluded from jury's consideration, and witness then went on to testify "that she had a conversation and that as a result of the conversation she made a determination regarding her future course of conduct"). See generally *Johnson v. State*, 289 Ga. 22, 26 (4) (709 SE2d 217) (2011) (noting that rule against hearsay "generally prevents witnesses from testifying as to *statements* made by third parties," and concluding that investigator's testimony, which did not disclose any "statement" made by tipster to him, was not hearsay) (emphasis supplied); *Henley v. State*, 285 Ga. 500, 507 (5) (678 SE2d 884) (2009) (investigator's testimony was not hearsay because it "did not relay information told to him by other persons").

Furthermore, even if E. S.'s testimony about her reaction to the I. S.'s note could be construed as indirectly or implicitly disclosing the content of the note,[3] the

___

[3] Testimony that is not hearsay on its face nevertheless can constitute inadmissible hearsay under certain circumstances. See generally *Felder v. State*, 270 Ga. 641, 645 (8) (514 SE2d 416) (1999) (officer's testimony that defendant's mother threw murder weapon into river was "apparent" hearsay because officer was not personally present when mother discarded the weapon). See also Paul S. Milich, Georgia Rules of Evidence § 16.6, pp. 530-535 (2011-2012 ed.).

testimony was not hearsay because the content was admissible under OCGA § 24-3-2. That statute provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence."[4]

> In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), the Supreme Court of Georgia stated a rule for applying OCGA § 24-3-2; if the conduct and motives of the actor are relevant to the issues on trial, then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct.

(Citation and punctuation omitted.) *Davenport v. State*, 278 Ga. App. 16, 23 (2) (c) (628 SE2d 120) (2006), disapproved in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II), n. 1 (642 SE2d 56) (2007).

E. S. explained that in response to the note from I. S., she cried herself to sleep and felt guilty for failing to protect her sister, which led to her decision not to resist further sexual abuse from Alford in hopes that he would no longer abuse I. S. Her reaction to the note helped explain why she acquiesced to the continued sexual abuse by Alford and waited so long to make an outcry to a third party, issues that were

---

[4] As of January 1, 2013, OCGA § 24-3-2 will stand repealed when the new evidence code becomes effective.

relevant under the particular circumstances of this case in light of the defense's theory that the allegations of abuse were fabricated. See *Pruitt v. State*, 274 Ga. 708, 710 (2) (a) (559 SE2d 470) (2002) (testimony explaining why there was a long delay by a witness in reporting the crime was relevant to the jury's evaluation of the witness's credibility, where defense alleged that witness had fabricated the allegations). See generally *Hicks v. State*, 196 Ga. App. 311, 312 (1) (396 SE2d 60) (1990) (trial court acted within its discretion in admitting testimony "relevant to the issue of why a child might delay reporting incidents of molestation").

For this reason, to the extent that E. S.'s testimony about her reaction could be construed as indirectly or implicitly disclosing the contents of I. S.'s note, her testimony was admissible to explain her conduct pursuant to OCGA § 24-3-2 and thus did not violate the rule against hearsay. See *Pruitt*, 274 Ga. at 710-711 (2) (b) (testimony explaining reason for long delay in reporting crime properly admitted under OCGA § 24-3-2). See also *Potts v. State*, 259 Ga. 96, 103 (16) (376 SE2d 851) (1989) (citing to OCGA § 24-3-2 and holding that trial court did not err in admitting testimony explaining why victim waited so long to escape from defendant).

(b) *Relevancy*. Second, the trial court acted within its discretion in overruling defense counsel's relevancy objection to E. S.'s testimony about her reaction to I. S.'s

note. As explained in Division 2 (a), E. S.'s testimony regarding her reaction was relevant to help explain why she acquiesced to the continued sexual abuse and her long delay in making an outcry to a third party.

(c) *Bolstering.* Third and finally, the trial court acted within its discretion in overruling defense counsel's objection that E. S.'s testimony about her reaction to the note improperly bolstered I. S.'s credibility. "It is well established that credibility of a witness is a matter for the jury, and a witness's credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." (Punctuation and footnote omitted.) *Strickland v. State*, 311 Ga. App. 400, 403 (a) (715 SE2d 798) (2011). But where, as here, testimony is admissible for the purpose of showing the effect on the victim or to explain the victim's conduct, the testimony does not constitute improper bolstering. See *Painter v. State*, 219 Ga. App. 290, 296 (7) (465 SE2d 290) (1995).

2. Alford contends that the trial court erred in denying his motion for a new trial because his trial counsel was ineffective for failing to object to the improper bolstering testimony of I. S.'s tenth grade teacher. Because Alford cannot show

11

prejudice resulting from trial counsel's failure to object, we conclude that he cannot succeed on his ineffective assistance claim.

> In order to succeed on his claim of ineffective assistance, [Alford] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984). If [Alford] fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Lynch v. State*, 291 Ga. 555, 556 (2) (731 SE2d 672) (2012). Guided by these principles, we turn to the record here.

During her direct-examination, the State asked I. S.'s tenth grade teacher to describe I. S.'s demeanor when she was speaking with the teacher and the school counselor in February 2009. The teacher answered that I. S. "was crying very hard" but then went on to testify, unresponsively, that I. S. finally told them the "truth" about what had happened. Trial counsel did not object to the teacher's testimony on bolstering grounds. At the hearing on Alford's motion for a new trial, counsel

12

explained that his failure to object was not a matter of trial strategy but was an oversight.

Alford contends that the teacher's unresponsive remark about I. S. telling "the truth" constituted improper bolstering of I. S.'s veracity and that his trial counsel was ineffective for failing to object to the testimony and have it stricken. We agree that the teacher's remark was improper and that the failure to object to the testimony or request that it be stricken constituted deficient performance. However, the teacher's remark was not so significant that there was a reasonable probability that the outcome at trial would have been different if counsel had objected or moved to strike. The improper testimony consisted of a single, unresponsive remark during the course of a trial with several witnesses. Moreover, I. S.'s account of the sexual abuse remained consistent, and Alford had a full opportunity to test her credibility during cross-examination. Additionally, E. S. testified to similar incidents of sexual abuse.

Under these circumstances, Alford cannot establish prejudice resulting from the teacher's remark. See *Strickland*, 311 Ga. App. at 404 (2) (a) (no prejudice resulted from failure to object to bolstering testimony in child molestation case, where victim's testimony remained consistent, the defendant had a full opportunity to cross-

13

examine the victim, and there was testimony regarding similar instances of abuse to other victims); *Anderson v. State*, 282 Ga. App. 58, 63 (3) (a) (637 SE2d 790) (2006), disapproved in part on other grounds, *Schofield*, 281 Ga. at 811-812 (II), n. 1 (no prejudice resulted from failure to object to bolstering testimony in child molestation case, where offending testimony consisted of a single response during "a day-long trial with multiple witnesses," and where victim's testimony remained consistent and defendant had a full opportunity to cross-examine the victim). Compare *Gaston v. State*, __ Ga. App. __ (1) (731 SE2d 79) (2012) (admission of bolstering testimony was prejudicial, where, among other things, victim's "various accounts contained inconsistencies"); *Mann v. State*, 252 Ga. App. 70, 73-74 (1) (555 SE2d 527) (2001) (failure to object to bolstering testimony was prejudicial, where the only evidence of the molestation arose out of statements made by the victim, and the victim gave materially different accounts of what had occurred). It follows that the trial court did not err in denying Alford's motion for new trial.

*Judgment affirmed. McFadden and McMillian, JJ., concur.*