**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A2421. FUTCH v. THE STATE.

RAY, Judge.

Following a jury trial, Reuben Amory Futch, III, was convicted of two counts each of aggravated child molestation (OCGA § 16-6-4 (c)) and child molestation (OCGA § 16-6-4 (a) (1)), and one count of enticing a child for indecent purposes (OCGA § 16-6-5). Futch does not challenge the sufficiency of the evidence supporting his convictions. On appeal, he contends that the trial court erred in denying his motions to strike certain prospective jurors for cause, in ruling on certain motions in limine, and in allowing the statement that he had made to police to be admitted into evidence. Finding no reversible error, we affirm.

1. Futch first contends that the trial court abused its discretion in denying his motions to excuse three prospective jurors for cause. We disagree.

"The decision [whether] to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest abuse of that discretion." (Citation omitted.) *Abdullah v. State*, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008).

> Unless the juror holds an opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the evidence and court instructions, a court need not excuse the juror for cause. A potential juror's doubts as to his or her own impartiality or reservations about his or her ability to set aside personal experiences do not necessarily require the court to strike the juror, as the judge is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict.

(Citation omitted.) *Beaudoin v. State*, 311 Ga. App. 91, 92-93 (2) (714 SE2d 624) (2011).

(a) During voir dire, Juror No. 28 indicated that he had some personal experience with child sexual abuse. Juror 28 was later questioned individually, and he explained that his grandfather had molested other members of his family and that he had investigated several child molestation cases while he was in the military. Based on the foregoing, Juror 28 stated that he would be uncomfortable hearing this

2

type of case. However, when asked if he could listen to the evidence in this case and apply the law to the facts before forming an opinion as to Futch's guilt or innocence, Juror 28 acknowledged that he could.

Here, it is clear that Juror 28's bias was against the nature of the crime of child molestation, not against Futch. As Juror 28 acknowledged that he could determine the issues impartially based on the evidence, the trial court did not abuse its discretion in refusing to strike him. Id. at 93 (2).

(b) During voir dire, Juror No. 42 indicated that she knew Futch. In response to further questioning, Juror 42 stated that Futch had worked for her cousins and that she had graduated from high school with Futch's sister. She further indicated that she was a teacher at the school where the victim was a student and that she knew the school teachers who were potential witnesses in the case. Despite her acquaintance with the families and potential witnesses involved, Juror 42 had never discussed the facts of this case with anyone, and she felt that she could be a fair and impartial juror in the case. Although Juror 42 acknowledged that the case may be difficult for her, she had not formed an opinion as to Futch's guilt or innocence. When asked if her acquaintances would make her "lean" one way or the other, Juror 42 initially

responded "[p]robably" and then later responded "[n]ot necessarily." Futch's counsel did not question Juror 42 any further, nor did he request to do so.

At the conclusion of voir dire, Futch moved to strike Juror 42 for cause based on her acquaintance with the families and potential witnesses. In denying the motion to strike, the trial court noted Juror 42's demeanor and credibility, and found that she did not have a fixed opinion as to Futch's guilt or innocence. The trial court further found that there was nothing to indicate that Juror 42 could not listen to the evidence and follow the court's instructions.

Citing *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474 (722 SE2d 84) (2011), Futch contends that the trial court had an affirmative duty to conduct further voir dire of Juror 42, either through its own questioning or by allowing questions by counsel, to evaluate her fairness and impartiality before ruling on the motion to strike her for cause. However, the record shows that both parties were able to question Juror 42 regarding any potential bias.

In *Harper*, the prospective jurors at issue explicitly expressed bias toward one of the parties. Id. at 476-477 (1). Here, Juror 42 acknowledged that she was acquainted with both families and some potential witnesses involved in the case, but

4

she expressed *no* bias towards either party. See *Berry v. State*, 302 Ga. App. 31, 32-35 (1) (690 SE2d 428) (2010) (holding that court would not imply bias when juror admitted to having a friendship and business relationship with district attorney but also stated that she was not biased); *Remillard v. Longstreet Clinic, P.C.*, 267 Ga. App. 230, 232 (1) (599 SE2d 198) (2004) (holding that court would not presume prejudice when six jurors stated that they or their family members had continuing patient relationships with doctors employed by defendant, but also testified that the relationships "would not affect their ability to render a fair verdict in the case"); *Smith v. Folger*, 237 Ga. App. 888, 889 (2) (517 SE2d 360) (1999) (holding that potential juror, whose wife was being represented by the same defense counsel in an unrelated case, was not disqualified when the potential juror expressed no bias).

In this case, Juror 42 indicated that she thought she could be a fair and impartial juror in this case. After observing her demeanor and assessing her credibility, the trial court agreed.

A trial court has broad discretion in deciding whether to strike a prospective juror for cause because we have only a cold record from which to size up a prospective juror and, thus, are in no position to assess whether a prospective juror

5

spoke with assurance or uncertainty, enthusiasm or hesitation, candor or guile. On the other hand,

> [a] trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks.

(Citation and punctuation omitted.) *Harrison v. State*, 309 Ga. App. 454, 454 (1) (711 SE2d 35) (2011). Thus, we owe substantial deference to the findings of the trial court, including its "resolution of any equivocations or conflicts" in the testimony of the prospective juror. *Leonard v. State*, 292 Ga. 214, 217 (3) (735 SE2d 767 (2012). Moreover, and in keeping with the substantial deference that we owe to the trial court, we must look to the record as a whole when we review the way in which the trial court exercised its broad discretion. *Ledford v. State*, 289 Ga. 70, 76 (6) (709 SE2d 239) (2011).

Viewing Juror 42's voir dire as a whole, we conclude that the trial court did not abuse its discretion in finding that she was qualified to serve.

(c) During voir dire, Juror No. 75 indicated that he knew the victim and her family because he, the victim, and the victim's family attended the same church. The

transcript shows that both parties were able to question Juror 75 regarding any potential bias that he may have based on his acquaintance with the family. Although he acknowledged that it would be hard on him if he were chosen as a juror in the case, he confirmed that he could set aside any preconceived notions and friendships and listen to the evidence. Juror 75 further indicated that he thought he could be a fair and impartial juror, and he later confirmed that he could be fair. In response to questioning from Futch's counsel, Juror 75 acknowledged that it was possible that if Futch was found not guilty that it would create a conflict that he would have a hard time dealing with based on his acquaintance with the victim's family. Juror 75 further conceded that it would be fair for Futch's counsel to *assume* that he could not be fair and impartial, but Juror 75 never indicated that he could not be fair and impartial. Futch's counsel did not question Juror 75 any further, nor did he seek to do so.

At the conclusion of voir dire, Futch moved to strike Juror 75 for cause, contending that he had indicated that he could not be fair and impartial juror because he knew the victim and her family. Juror 75 , however, made no such statement. Rather, Juror 75 stated that he thought he could be a fair and impartial, that he recognized that he would have a hard time hearing this case, and that he conceded that it would be fair for Futch's counsel to *assume* that he could not be fair and

7

impartial. In denying the motion to strike, the trial court noted Juror 75's demeanor and credibility, and found that he did not have a fixed opinion as to Futch's guilt or innocence. The trial court further found that there was nothing to indicate that Juror 75 could not listen to the evidence and follow the court's instructions.

With regard to a trial court's decision not to strike a juror, there is no manifest abuse of discretion unless it is shown that the juror's opinion is so fixed and definite that he would be unable to decide the case based on the evidence and the instructions from the trial court. *Beaudoin*, supra. Accord *Miller v. State*, 275 Ga. 730, 736 (5) (571 SE2d 788) (2002) (Dismissal of three prospective jurors for cause, based on exposure to pretrial publicity and their initial inclinations to lean towards the prosecution, was not warranted where the prospective jurors indicated that they could set aside their preconceived notions and decide the case based solely on the evidence and the trial court's instructions). Furthermore, we give substantial deference to the trial court's findings regarding the demeanor and credibility of the prospective juror, as well as its resolution of any equivocations or conflicts in the prospective juror's testimony. *Harrison*, supra; *Leonard*, supra.

While we may have reached another conclusion based merely on the words on the paper transcript, we were not able to view the juror testify in court. Viewing Juror

8

75's voir dire as a whole, we cannot say that the trial court abused its discretion in denying the motion to strike him for cause.

We note that Futch ultimately exercised his peremptory strikes to exclude the three jurors at issue in this case. However, this fact has no bearing on our analysis, because a defendant is entitled to a full panel of qualified jurors against which to exercise his peremptory strikes. See *Rice v. State*, 292 Ga. 191, 194-195 (3) (733 SE2d 755) (2012). However, as the trial court did not manifestly abuse its discretion in denying Futch's motions to strike these jurors for cause, we conclude that there is no reversible error.

2. Futch contends that the trial court erred in denying his motion in limine to exclude any testimony or argument regarding the victim's religious beliefs being a possible motive for her outcry. We disagree.

"As a general rule, the admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation and punctuation omitted.) *Alford v. State*, 320 Ga. App. 523, 526 (2) (738 SE2d 124) (2013).

Here, the testimony of the victim and an outcry witness showed that the victim delayed making her outcry because she was embarrassed about the sexual abuse.

9

After she was baptized, the victim believed that God had forgiven her, and she then decided to tell her teacher. We find that such testimony is relevant and admissible to explain why the victim waited over two years to make an outcry to a third party. Id. at 527-528 (2) (a) and (b). As the testimony is admissible for the purpose of showing the effect of the sexual abuse on the victim and to explain the victim's conduct, we conclude that such testimony does not constitute improper bolstering. Id. at 528 (2) (c). Accord *Ledford v. State*, 313 Ga. App. 389, 391-392 (2) (721 SE2d 585) (2011). Furthermore, as the victim testified at trial, any perceived "bolstering" could have been explored by Futch on cross-examination. See Id., supra.

Futch also argues that testimony improperly injected religion and the victim's character into evidence. Our Supreme Court has held that background information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase. See *Lucas v. State*, 274 Ga. 640, 643 (2) (b) (555 SE2d 440) (2001).

In the context of this particular case, however, the testimony which referenced the victim's baptism was relevant to explain the circumstances surrounding the victim's ultimate decision to come forward after years of sexual abuse. See *Brinson*

*v. State*, 191 Ga. App. 151, 154 (5) (381 SE2d 292) (1989) ("The victim's conduct and veracity are matters concerning which the truth must be found. . . . [T]he minor victim's credibility, which might be sustained by prompt reporting of the offense or by offering an explanation for the failure to do so, as well as by her reaction to and interaction with defendant, were relevant issues for the jury's consideration") (citations and punctuation omitted). Moreover, Futch had ample opportunity to cross-examine the victim regarding her credibility.

As the testimony was relevant and the probative value of the testimony outweighed its prejudicial effect, we find that trial court did not abuse its discretion in allowing this testimony.

3. Futch contends that the trial court erred by initially granting the State's pre-trial motion in limine to exclude any testimony or argument regarding the victim's history of sexual self-stimulation and the fact that the victim had previously been touched by a boy at daycare. Specifically, he argues that these facts were central to his theory of defense — i.e., that the victim was molested by the boy and that her allegations against Futch were fabricated. Futch further argues that the trial court's reversal of its ruling during the trial prevented him from presenting this defense. We discern no reversible error.

11

Prior to trial, the State sought to exclude any testimony regarding certain statements made by the victim to a school counselor regarding the victim's self-stimulation during class. The defense proffered that there would be testimony to show that a school counselor had previously questioned the victim about the cause of her behavior and that the victim had told the counselor that on one occasion that another child had accidently touched her at daycare. The trial court granted the State's motion in limine, but the trial court expressly stated that it could reconsider its ruling depending on the evidence presented at trial.

Relevant evidence is that "which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue[.]" (Citations and punctuation omitted.) *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981). "As a general rule, the admission or exclusion of evidence on the grounds of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed without a showing of a clear abuse of that discretion." (Punctuation and footnote omitted.) *Hall v. State*, 320 Ga. App. 48, 49 (739 SE2d 61) (2013).

> Absent a showing of relevance, evidence of a child's past sexual history, including acts committed by persons other than the accused, is

12

inadmissible. Moreover, evidence of a prior molestation or previous sexual activity on the part of the victim is not relevant in a child molestation case to show either the victim's reputation for nonchastity or her preoccupation with sex. However, this [C]ourt also has held that where the State introduces medical testimony indicating that the child has been sexually abused or evidence of child abuse accommodation syndrome and connects the child's behavior to that syndrome, evidence that the victim may have been molested by someone other than the accused may be admissible to establish other possible causes for the behavioral and medical symptoms exhibited by the child.

(Footnote omitted.) Id. at 49-50.

During the State's presentation of its case-in-chief, the State elicited testimony from the outcry witness, the victim's teacher, that the victim exhibited several behavioral and physical symptoms of sexual abuse while at school which included, inter alia, that the victim was sexually stimulating herself during class. The teacher testified that the victim's self-stimulation continued for several months, that she had talked to the victim about it, and that the victim did not know why she was doing it other than it sometimes "felt good." After several months of this behavior, the victim finally approached the teacher, told her that she knew what she was doing was wrong, and that she wanted to stop. She then disclosed that Futch had been sexually abusing her. As this testimony appeared to connect the victim's behavior to the sexual abuse

13

committed by Futch, the testimony proffered by the defense regarding the victim's prior explanation for her self-stimulation during class - i.e., that she had been inappropriately touched by another child at daycare, would have been admissible to establish another possible cause for the victim's behavior.

Pretermitting whether the trial court erred in initially granting the State's motion in limine, the record shows that the State ultimately introduced evidence that the victim had been touched by another child at daycare. The trial court then reversed its prior ruling and decided to allow Futch to question the witnesses about the daycare incident.

Futch contends that, by this point, his defense was compromised because he was unable to cross-examine the State's earlier witnesses regarding the daycare incident. However, the record shows that Futch had ample opportunity to present his theory of defense.

After the trial court reversed its decision, the State recalled the victim's teacher to the witness stand. She testified that the victim, during her outcry, did not mention the daycare incident. Futch chose not to cross-examine this witness to determine whether she had any *other* knowledge of the daycare incident or whether the victim

14

had previously disclosed that the daycare incident was the cause of her behavior in class.

The State then called the victim to testify, and Futch was able to cross-examine the victim regarding the daycare incident. The victim testified that she had told her teachers and a counselor that "a little boy accidentally touched me," and she further testified that the boy was about her age and that it happened only once while they were playing. Futch did not question the victim any further regarding this issue.

Lastly, Futch testified at trial , and he was questioned by both the defense and the State about his knowledge of the daycare incident.

After the presentation of the above testimony, Futch did not ask to recall any of the earlier witnesses or seek to call any additional witnesses to explore the daycare incident any further. As Futch had ample opportunity to explore the daycare incident as a possible cause of the behavior exhibited by the victim but declined to do so, we find any resulting harm suffered by Futch falls squarely on his shoulders. It is axiomatic that "[a defendant] cannot complain of error induced by his own conduct." (Punctuation and footnote omitted.) *Drummond v. State*, 275 Ga. App. 86, 87 (1) (619 SE2d 784) (2005).

15

4. In his last enumeration of error, Futch contends that the trial court erred by admitting the audio recording of the statement that he gave to the police during the investigation. Specifically, Futch argues that his statement was not freely and voluntarily made. We disagree.

In reviewing a trial court's decision regarding the admissibility of a defendant's statement, we owe no deference to the way in which the trial court resolved questions of law, but we accept the trial court's factual findings and credibility determinations unless clearly erroneous.[1] *Edenfield v. State*, 293 Ga. 370, 374 (2) (744 SE2d 738) (2013).

At the *Jackson-Denno* hearing prior to trial, Special Agent Jason Shoudel of the Georgia Bureau of Investigation testified that he interviewed Futch and made an audio recording of his statement. Agent Shoudel testified that, prior to this interview, he advised Futch of his *Miranda*[2] rights, that Futch indicated that he understood those rights, and that Futch agreed to talk with him about the victim. Agent Shoudel testified that Futch was not impaired or otherwise unable to understand his rights or

---

[1] When the material facts are not in dispute because they can be ascertained from a recording of a statement, we give less deference to the trial court's factual findings. *Edenfield*, supra at 374 (2), n. 6.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

16

the purpose of the interview, that Futch was not threatened in any way, and that Futch did not request an attorney or seek to terminate the questioning at any time during the interview. Based on this testimony, the trial court found that Futch's statement was freely and voluntarily made, and it ruled that Futch's statement would be allowed into evidence at trial.

(a) The audio recording of the interview was played for the jury at trial. During his testimony, Agent Shoudel acknowledged that he had used trickery during the interview when he told Futch that the police had conducted a forensic interview/polygraph test of the victim and that the results revealed with certainty that she was telling the truth about being sexually abused by Futch, that the victim's brother had witnessed an incident where Futch had sexually abused the victim, and that there was an audio recording of the victim's father confronting Futch about the sexual abuse. Agent Shoudel further testified that his representations to Futch were untrue and that he had used such trickery in an attempt to elicit a truthful response from Futch. Ultimately, when confronted with the possibility that something could have happened between Futch and the victim while Futch was intoxicated, Futch stated that "anything is possible."

17

Our Supreme Court has held that the "[u]se of trickery and deceit to obtain a confession does not render it inadmissible, so long as the means employed are not calculated to procure an untrue statement." (Citation and punctuation omitted.) *Harris v. State*, 274 Ga. 422, 424 (3) (554 SE2d 458) (2001). Applying this principle, we find that Agent Shoudel's misrepresentations as to the existence of inculpatory evidence against Futch does not affect the admissibility of Futch's statement. Id.

(b) Furthermore, the fact that Agent Shoudel told Futch repeatedly during the interview that he was there to help Futch does not constitute a hope of benefit which would render Futch's statement involuntary. Agent Shoudel testified that he was merely offering to help Futch get the guilt off of his chest.

Under OCGA § 24-3-50,[3] a confession is only admissible if it was made voluntarily, "without being induced by another by the slightest hope of benefit[.]" This Code section "does not encompass every conceivable benefit that the police may offer a suspect in an effort to induce him to confess." *Brown v. State*, 290 Ga. 865, 868 (2) (b) (725 SE2d 320) (2012). Rather, the phrase "slightest hope of benefit" as

---

[3] This Code section, which was in effect at the time of Futch's trial, has been repealed by Laws 2011, Act 52, § 2, effective January 1, 2013. This principle of law, however, has been carried forward without any substantive change in the new Georgia evidence code. See OCGA § 24-8-824.

18

used in this Code section has consistently been interpreted to mean "promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." (Citations omitted.) Id. at 868-869 (2) (b).

Having reviewed the audio recording of the interview, and after considering the context of Agent Shoudel's numerous statements to Futch that he "was there to help him," we conclude that Futch could not have reasonably understood such statements to mean that he would receive lesser punishment or that he would never be charged or arrested for his crimes. Thus, Agent Shoudel did not induce Futch's statement with a "hope of benefit" within the meaning of OCGA § 24-3-50. Id. at 869-870 (2) (c).

For the above reasons, the trial court did not err in allowing Futch's statement into evidence.

*Judgment affirmed. Barnes, P. J. concurs and Miller, J., concurs in judgment only* .